# EXHIBIT
# 1


**FILED**
11/9/2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**RECEIVED**

NOV 0 2 2012   MR
NOV 02 2012
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILIP YORK, )
)
Plaintiff, )
)
vs. )

**12cv8824**
**Judge Milton I. Shadur**
**Magistrate Michael T. Mason**

CAPITAL MANAGEMENT SERVICES
INC

Defendant. )

## COMPLAINT

### I. Preliminary Statement

1.      This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq., as amended and the FAIR DEBT COLLECTIONS PRACTICES ACT (hereafter the "FDCPA"), 15 U.S.C. §1692 et seq., as amended*

### II. Jurisdiction and Venue

2.      Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337.

### III. Venue

3.      Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### IV. Parties

4.      Plaintiff, Philip York, is an adult individual and citizen of the city of Chicago, State of Illinois.

5.    Defendant, CAPITAL MANAGEMENT SERVICES INC, is a business entity that

regularly conducts business in the State of Illinois, and is a company whose principal place of

business is located at 6981/2 S Ogden st Buffalo, NY  14206

## V. FACTUAL ALLEGATIONS

6.    Plaintiff pulled his consumer credit reports from the three major credit

reporting agencies EXPERIAN, TRANS UNION and EQUIFAX where he found entries

by entities that he was unfamiliar with in the reports.

7.    Plaintiff determined that his consumer credit report had been obtained on various

occasions by various entities he did not recognize and without his consent.

8.    Plaintiff found after examination of his EXPERIAN, TRANS UNION and

EQUIFAX consumer credit reports that Defendant capital CAPITAL MANAGEMENT

SERVICES INC had obtained Plaintiff's EQUIFAX consumer credit report on 11/8/2011.

9.    Discovery of violation brought forth herein occurred in JULY of 2012 and is within

the statute of limitations as defined in FCRA, 15 U.S.C. § 1681p. and FDCPA,  15 U.S.C.

1692K(d)

## Count I

## VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 WILLFUL NON-COMPLIANCE BY DEFENDANT CAPITAL MANAGEMENT SERVICES INC

**10. Paragraphs 1 through 9 are realleged as though fully set forth herein.**

11. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

12. Defendant, CAPITAL MANAGEMENT SERVICES INC, is a Corporation that acts
as a debt collector, as defined by § 1692a of the FDCPA

13. Equifax is a credit reporting agency within the meaning of
the FCRA, 15 U.S.C. §    1681a(f).

14. Consumer credit report is a consumer report within the meaning of the FCRA, 15 U.S.C. § 1681a(d).

15. The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person may obtain a consumer credit report.

16. Such permissible purposes as defined by 15 U.S.C. § 1681b are generally, if the consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

17. Plaintiff has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from the Defendant CAPITAL MANAGEMENT SERVICES INC.

18. At no time did Plaintiff give his consent for Defendant CAPITAL MANAGEMENT SERVICES INC to acquire his consumer credit report from any credit reporting agency.

19. FCRA in 15 U.S.C. §1681a(r)(4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

20. The definition of "account" clearly does not include an account such as a credit card open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different. The Plaintiff never had any such account so there was obviously no permissible purpose for the credit pull.

21. On November 8, 2011 CAPITAL MANAGEMENT SERVICES INC obtained the Equifax consumer credit report for the Plaintiff with no permissible purpose in violation of FCRA, 15 U.S.C. § 1681b. Plaintiff has no idea or indication as to what possible alleged account CAPITAL MANAGEMENT SERVICES INC could claim to have of his and is positive he had no account with CAPITAL MANAGEMENT SERVICES INC which would come under the definition of account in the FCRA in regard to permissible purpose.

22. The action of Defendant CAPITAL MANAGEMENT SERVICES INC obtaining the consumer credit report of the Plaintiff with no permissible purpose or Plaintiff's consent was a violation of FCRA, 15 U.S.C. § 1681b(f) and an egregious violation of Plaintiff's right to privacy.

23.   **Paragraphs 1 through 9 are realleged as though fully set forth herein.**

**Count 2**

**VIOLATION OF THE FAIR DEBT COLLECTIONS PRACTICES ACT (FDCPA), 15 U.S.C. §1692 FALSE OR MISLEADING REPRESENTATIONS IN COMMUNICATIONS BY CAPITAL MANAGEMENT SERVICES INC**

24. Exhibit A violates 15 U.S.C. §§1692e, 1692e(2)(A) and 1692e(10).

25. 15 U.S.C. §1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section....

26.   1692 (2)     The false representation of –
(A) the character, amount, or legal status of any debt.... [or]

27.   1692 (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

**RELIEF**

Wherefore, Plaintiff demands judgment for damages against Defendant, CAPITAL MANAGEMENT SERVICES INC for statutory damages of $ 2000.00, punitive and statutory damages to be determined by this honorable court, attorney's fees, and
costs pursuant to 15 U.S.C. § 1681n(b) of the FCRA AND 15 U.S.C. § 1692K (a) of the FDCPA

**JURY DEMAND**

Plaintiff, Philip York, demands trial by jury.

Philip York,

By _____
Plaintiff

Dated: October 28, 2012

Philip York
2456 e 72nd st
Chicago ,IL60649
Ph (773)3195924
Pyork1969@gmail.com

# EXHIBIT
# 2

# Select A Case

**Philip York is a party in 9 cases.**

| | | | |
|---|---|---|---|
| 1:12-cv-08131 | York v. Cawley & Bergmann LLP | filed 10/10/12 | closed 01/08/13 |
| 1:12-cv-08138 | York v. Absolute Resolutions Corporation | filed 10/10/12 | closed 01/04/13 |
| 1:12-cv-08142 | York v. Equable Ascent Financial LLC | filed 10/10/12 | |
| 1:12-cv-08820 | York v. Ltd Financial Services L.P. | filed 11/02/12 | |
| 1:12-cv-08822 | York v. Cach LLC | filed 11/02/12 | |
| 1:12-cv-08823 | York v. NCO Financial Systems Inc | filed 11/02/12 | |
| 1:12-cv-08824 | York v. Capital Management Services Inc | filed 11/02/12 | |
| 1:12-cv-09790 | York v. FMS Inc. | filed 12/07/12 | |
| 1:12-cv-09791 | York v. Credit Protection Association LP | filed 12/07/12 | |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/14/2013 10:29:13 | | | |
| **PACER Login:** | sm1039 | **Client Code:** | 09999-0305 jpk |
| **Description:** | Search | **Search Criteria:** | Last Name: york First Name: philip |
| **Billable Pages:** | 1 | **Cost:** | 0.10 |

**FILED**
10/29/2012
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

YM

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

OCT 1 0 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

PHILIP YORK,

      Plaintiff,

      vs.

)
)
)

12CV8131
Judge Virginia M. Kendall
Mag. Judge Sheila M. Finnegan

CAWLEY & BERGMANN LLP

F/K/A
BRONSON + MIGLIACCIONP

      Defendant

## COMPLAINT

### I. Preliminary Statement

1.    This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq., as amended* and the *FAIR DEBT COLLECTIONS PRACTICES ACT (hereafter the "FDCPA"), 15 U.S.C. §1692 et seq., as amended*

### II. Jurisdiction and Venue

2.    Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337.

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### III. Parties

4.     Plaintiff, Philip York, is an adult individual and citizen of the city of Chicago, State of Illinois.

5.     Defendant BRONSON & MIGLIACCIO LLP changed name to, CAWLEY & BERGMANN LLP, is a business entity that regularly conducts business in the State of Illinois, and is a company whose principal place of business is located at 2200 Fetcher AVE. 5TH FLR Fort Lee, New Jersey 07024

## IV. FACTUAL ALLEGATIONS

6.     Plaintiff pulled his consumer credit reports from the three major credit reporting agencies EXPERIAN, TRANS UNION and EQUIFAX where he found entries by entities that he was unfamiliar with in the reports.

7.     Plaintiff determined that his consumer credit report had been obtained on various occasions by various entities he did not recognize and without his consent.

8.     Plaintiff found after examination of his EXPERIAN, TRANS UNION and EQUIFAX consumer credit reports that Defendant capital CAWLEY & BERGMANN LLP had obtained Plaintiff's TRANS UNION consumer credit report on 10/10/2011.

9.     Discovery of violation brought forth herein occurred in JULY of 2012 and is within the statute of limitations as defined in FCRA, 15 U.S.C. § 1681p. and FDCPA, 15 U.S.C. 1692K(d)

### Count I

### VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 WILLFUL NON-COMPLIANCE BY DEFENDANT CAWLEY & BERGMANN LLP

**10. Paragraphs 1 through 9 are realleged as though fully set forth herein.**

11. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

12. Defendant, CAWLEY & BERGMANN LLP, is a LIMITED LIABILTY PARTNERSHIP that acts as a debt collector, as defined by § 1692a of the FDCPA

13. Trans Union is a credit reporting agency within the meaning of the FCRA, 15 U.S.C. §    1681a(f).

14. Consumer credit report is a consumer report within the meaning of the FCRA, 15 U.S.C. § 1681a(d).

15. The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person may obtain a consumer credit report.

16. Such permissible purposes as defined by 15 U.S.C. § 1681b are generally, if the consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

17. Plaintiff has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from the Defendant CAWLEY & BERGMANN LLP.

18. At no time did Plaintiff give his consent for Defendant CAWLEY & BERGMANN LLP to acquire his consumer credit report from any credit reporting agency.

19. FCRA in 15 U.S.C. §1681a(r)(4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 103(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

20. The definition of "account" clearly does not include an account such as a credit card open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different. The Plaintiff never had any such account so there was obviously no permissible purpose for the credit pull.

21. On October 10, 2011 CAWLEY & BERGMANN LLP obtained the Trans Union consumer credit report for the Plaintiff with no permissible purpose in violation of FCRA, 15 U.S.C. § 1681b. Plaintiff has no idea or indication as to what possible alleged account CAWLEY & BERGMANN LLP could claim to have of his and is positive he had no account with CAWLEY & BERGMANN LLP which would come under the definition of account in the FCRA in regard to permissible purpose.

22. The action of Defendant CAWLEY & BERGMANN LLP obtaining the consumer credit report of the Plaintiff with no permissible purpose or Plaintiff's consent was a violation of FCRA, 15 U.S.C. § 1681b(f) and an egregious violation of Plaintiff's right to privacy.

23. **Paragraphs 1 through 9 are realleged as though fully set forth herein.**

### VIOLATION OF THE FAIR DEBT COLLECTIONS PRACTICES ACT (FDCPA), 15 U.S.C. §1692 FALSE OR MISLEADING REPRESENTATIONS IN COMMUNICATIONS CAWLEY & BERGMANN LLP

24.  Exhibit A violates 15 U.S.C. §§1692e, 1692e(2)(A) and 1692e(10).

25.  15 U.S.C. §1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section....

26.  1692 (2)    The false representation of –
(A) the character, amount, or legal status of any debt.... [or]

27.  1692 (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

### RELIEF

Wherefore, Plaintiff demands judgment for damages against Defendant, CAWLEY & BERGMANN LLP for statutory damages of $2000.00, punitive damages to be determined by this honorable court, attorney's fees, and
costs pursuant to 15 U.S.C. § 1681n(b) of the FCRA  AND  15 U.S.C. § 1692K (a) of the FDCPA

### JURY DEMAND

Plaintiff, Philip York, demands trial by jury.

Philip York,

By _____
Plaintiff

Dated: October 10, 2012

Philip York
2456 e 72nd st
Chicago ,IL60649
Ph (773)3195924
Pyork1969@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

OCT 1 0 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

PHILIP YORK,               )
                           )
            Plaintiff,     )
                           )
    vs.                    )
                           )
ABSOLUTE RESOLUTIONS CORP  )
                           )
            Defendant.     )
                           )

12CV8138
Judge Gary Feinerman
Mag. Judge  Michael T. Mason

## COMPLAINT

### I. Preliminary Statement

1.     This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq., as amended and the FAIR DEBT COLLECTIONS PRACTICES ACT (hereafter the "FDCPA"), 15 U.S.C. §1692 et seq., as amended*

### II. Jurisdiction and Venue

2.     Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337.

### III.     Venue

3. Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### IV. Parties

4.     Plaintiff, Philip York, is an adult individual and citizen of the city of Chicago, State of Illinois.

5.     Defendant, ABSOLUTE RESOLUTIONS CORPORATION, is a business entity that regularly conducts business in the State of Illinois, and is a company whose principal place of business is located at 6602 El Cajon Blvd ste 200 San Diego, CA 92115

## V. FACTUAL ALLEGATIONS

6.     Plaintiff pulled his consumer credit reports from the three major credit reporting agencies EXPERIAN, TRANS UNION and EQUIFAX where he found entries by entities that he was unfamiliar with in the reports.

7.     Plaintiff determined that his consumer credit report had been obtained on various occasions by various entities he did not recognize and without his consent.

8.     Plaintiff found after examination of his EXPERIAN, TRANS UNION and EQUIFAX consumer credit reports that Defendant ABSOLUTE RESOLUTIONS CORPORATION had obtained Plaintiff's EXPERIAN consumer credit report on 10/12/2011.

9.     Discovery of violation brought forth herein occurred in JULY of 2012 and is within the statute of limitations as defined in FCRA, 15 U.S.C. § 1681p. and FDCPA, 15 U.S.C. 1692K(d)

## Count I

### VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 WILLFUL NON-COMPLIANCE BY DEFENDANT ABSOLUTE RESOLUTIONS CORPORATION

**10. Paragraphs 1 through 9 are realleged as though fully set forth herein.**

11. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

12. Defendant, ABSOLUTE RESOLUTIONS CORPORATION, is a Corporation that acts as a debt collector, as defined by § 1692a of the FDCPA

13.  Experian is a credit reporting agency within the meaning of
the FCRA, 15 U.S.C. §    1681a(f).

14.  Consumer credit report is a consumer report within the meaning of the FCRA, 15
U.S.C. § 1681a(d).

15.  The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person
may obtain a consumer credit report.

16.  Such permissible purposes as defined by 15 U.S.C. § 1681b are generally, if the
consumer makes application for credit, makes application for employment, for underwriting of
insurance involving the consumer, or is offered a bona fide offer of credit as a result of the
inquiry.

17.  Plaintiff has never had any business dealings or any accounts with, made application
for credit from, made application for employment with, applied for insurance from, or received a
bona fide offer of credit from the Defendant ABSOLUTE RESOLUTIONS CORPORATION.

18.  At no time did Plaintiff give his consent for Defendant ABSOLUTE
RESOLUTIONS CORPORATION to acquire his consumer credit report from any credit
reporting agency.

19.  FCRA in 15 U.S.C. §1681a(r)(4) states: The terms "account" and "electronic fund
transfer" have the same meanings as in section 1693a of this title.

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other
than an occasional or incidental credit balance in an open end credit plan as defined in section
103(i) of this Act), as described in regulations of the Board, established primarily for personal,
family, or household purposes, but such term does not include an account held by a financial
institution pursuant to a bona fide trust agreement;

20.  The definition of "account" clearly does not include an account such as a credit card
open end credit account but does include a demand deposit account, savings deposit or other asset
account which is wholly different. The Plaintiff never had any such account so there was
obviously no permissible purpose for the credit pull.

21.  On October 12, 2011 ABSOLUTE RESOLUTIONS CORPORATION obtained the
Experian consumer credit report for the Plaintiff with no permissible purpose in violation of
FCRA, 15 U.S.C. § 1681b. Plaintiff has no idea or indication as to what possible alleged account
ABSOLUTE RESOLUTIONS CORPORATION could claim to have of his and is positive he had
no account with ABSOLUTE RESOLUTIONS CORPORATION which would come under the
definition of account in the FCRA in regard to permissible purpose.

22.  The action of Defendant ABSOLUTE RESOLUTIONS CORPORATION obtaining the
consumer credit report of the Plaintiff with no permissible purpose or Plaintiff's consent was a
violation of FCRA, 15 U.S.C. § 1681b(f) and an egregious violation of Plaintiff's right to privacy.

23.   **Paragraphs 1 through 9 are realleged as though fully set forth herein.**

**Count 2**

**VIOLATION OF THE FAIR DEBT COLLECTIONS PRACTICES ACT (FDCPA), 15 U.S.C. §1692 FALSE OR MISLEADING REPRESENTATIONS IN COMMUNICATIONS ABSOLUTE RESOLUTIONS CORPORATION**

24. Exhibit A violates 15 U.S.C. § 1692e, § 1692e(2)(A) and § 1692e(10).

25. 15 U.S.C. §1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section....

26. §1692 (2) The false representation of –
(A) the character, amount, or legal status of any debt.... [or]

27. §1692 (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

**RELIEF**

Wherefore, Plaintiff demands judgment for damages against Defendant, ABSOLUTE RESOLUTIONS CORPORATION for statutory damages of $2000.00, punitive damages to be determined by this honorable court, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n(b) of the FCRA AND 15 U.S.C. § 1692K (a) of the FDCPA

**JURY DEMAND**

Plaintiff, Philip York, demands trial by jury.

Philip York,

By _____
                    Plaintiff

Dated: October 10, 2012

Philip York
2456 e 72nd st
Chicago ,IL60649
Ph (773)3195924
Pyork1969@gmail.com



IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

OCT 1 0 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

PHILIP YORK,          )

     Plaintiff,     )

     vs.     

EQUABLE ASCENT FINANCIAL LLC,  )

     Defendant.   )

12CV8142
Judge Amy J. St. Eve
Mag. Judge Arlander Keys

### COMPLAINT

#### I. Preliminary Statement

1.    This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq., as amended and the FAIR DEBT COLLECTIONS PRACTICES ACT (hereafter the "FDCPA"), 15 U.S.C. §1692 et seq., as amended*

#### II. Jurisdiction and Venue

2.    Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337.

3.    Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

#### III. Parties

4.    Plaintiff, Philip York, is an adult individual and citizen of the city of Chicago, State of Illinois.

5.      Defendant, Equable Ascent Financial LLC, is a business entity that regularly conducts business in the State of Illinois, and is a company whose principal place of business is located at 1120 w Lake Cook rd  Buffalo Grove,  IL 60089

## IV. FACTUAL ALLEGATIONS

6.      Plaintiff pulled his consumer credit reports from the three major credit reporting agencies EXPERIAN, TRANS UNION and EQUIFAX where he found entries by entities that he was unfamiliar with in the reports.

7.      Plaintiff determined that his consumer credit report had been obtained on various occasions by various entities he did not recognize and without his consent.

8.      Plaintiff found after examination of his Experian Trans Union and Equifax consumer credit reports that Defendant EQUABLE ASCENT FINANCIAL LLC had obtained Plaintiff's Trans Union consumer credit report on August 2nd 2010, August 19th 2010  and December 12TH 2011.

9.      Discovery of violations brought forth herein occurred in JULY of 2012 and is within the statute of limitations as defined in FCRA, 15 U.S.C. § 1681p. and FDCPA,  15 U.S.C. 1692K(d)

### Count I

### VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 WILLFUL NON-COMPLIANCE BY DEFENDANT EQUABLE ASCENT FINANCIAL LLC.

**10. Paragraphs 1 through 9 are realleged as though fully set forth herein.**

11. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

12. Defendant, EQUABLE ASCENT FINANCIAL LLC., ("NCO"), is a limited liability company that acts as a debt collector, as defined by § 1692a of the FDCPA

13. Trans Union is a credit reporting agency within the meaning of the FCRA, 15 U.S.C. § 1681a(f).

14. Consumer credit report is a consumer report within the meaning of the FCRA, 15 U.S.C. § 1681a(d).

15. The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person may obtain a consumer credit report.

16. Such permissible purposes as defined by 15 U.S.C. § 1681b are generally, if the consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

17. Plaintiff has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from the Defendant EQUABLE ASCENT FINANCIAL LLC.

18. At no time did Plaintiff give his consent for Defendant EQUABLE ASCENT FINANCIAL LLC
to acquire his consumer credit report from any credit reporting agency.

19. FCRA in 15 U.S.C. §1681a(r)(4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 103(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

20. The definition of "account" clearly does not include an account such as a credit card open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different. The Plaintiff never had any such account so there was obviously no permissible purpose for the credit pull.

21. On August 2nd 2010, August 19th 2010 and December 12TH 2011 EQUABLE ASCENT FINANCIAL LLC obtained the Trans Union consumer credit report for the Plaintiff with no permissible purpose in violation of FCRA, 15 U.S.C. § 1681b. Plaintiff has no idea or indication as to what possible alleged account EQUABLE ASCENT FINANCIAL LLC could claim to have of his and is positive he had no account with EQUABLE ASCENT FINANCIAL LLC. which would come under the definition of account in the FCRA in regard to permissible purpose.

22. The action of Defendant EQUABLE ASCENT FINANCIAL LLC. obtaining the consumer credit report of the Plaintiff with no permissible purpose or Plaintiff's consent was a violation of FCRA, 15 U.S.C. § 1681b(f) and an egregious violation of Plaintiff's right to privacy.

23. **Paragraphs 1 through 9 are realleged as though fully set forth herein.**

**Count 2**

### VIOLATION OF THE FAIR DEBT COLLECTIONS PRACTICES ACT (FDCPA), 15 U.S.C. §1692 FALSE OR MISLEADING REPRESENTATIONS IN COMMUNICATIONS EQUABLE ASCENT FINANCIAL LLC.

24. Exhibit A violates 15 U.S.C. §§1692e, 1692e(2)(A) and 1692e(10).

25. 15 U.S.C. §1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section....

(2)     The false representation of –
(A)    the character, amount, or legal status of any debt.... [or]

(10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

### RELIEF

Wherefore, Plaintiff demands judgment for damages against Defendant, EQUABLE ASCENT FINANCIAL LLC. for statutory damages of $4000.00, punitive damages to be determined by this honorable court, attorney's fees, and
costs pursuant to 15 U.S.C. § 1681n(b) of the FCRA  AND  15 U.S.C. § 1692K (a) of the FDCPA

### JURY DEMAND

Plaintiff, Philip York, demands trial by jury.

Philip York,

By _____
                plaintiff

Dated: September 27, 2012

Philip York
2456 e 72nd st
Chicago ,IL60649
Ph (773)319-5924
Pyork1969@gmail.com

**RECEIVED**

NOV 0 2 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**FILED**

11/20/2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILIP YORK,                      )
                                  )
    Plaintiff,                    )
                                  )       12cv8820
    vs.                           )       Judge Joan H. Lefkow
                                  )       Magistrate Michael T. Mason
                                  )
LTD FINANCIAL SERVICES L.P.       )
                                  )
    Defendant.                    )

## COMPLAINT

### I. Preliminary Statement

1.    This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq., as amended*

### II. Jurisdiction

2.    Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337.

### III. Venue

3.    Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### IV. Parties

4.    Plaintiff, Philip York, is an adult individual and citizen of the city of Chicago, State of Illinois.

5.     Defendant, LTD FINANCIAL SERVICES, is a business entity that regularly conducts business in the State of Illinois, and is a company whose principal place of business is located at 7322 Sothwets HWY ste 1600 Houston TX 77074

## V. FACTUAL ALLEGATIONS

6.     Plaintiff pulled his consumer credit reports from the three major credit reporting agencies EXPERIAN, TRANS UNION and EQUIFAX where he found entries by entities that he was unfamiliar with in the reports.

7.     Plaintiff determined that his consumer credit report had been obtained on various occasions by various entities he did not recognize and without his consent.

8.     Plaintiff found after examination of his EXPERIAN, TRANS UNION and EQUIFAX consumer credit reports that Defendant capital LTD FINANCIAL SERVICES had obtained Plaintiff's EXPERIAN consumer credit report on 8/25/2010.

9.     Discovery of violation brought forth herein occurred in JULY of 2012 and is within the statute of limitations as defined in FCRA, 15 U.S.C. § 1681p. and FDCPA,  15 U.S.C. 1692K(d)

### Count I

### VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 WILLFUL NON-COMPLIANCE BY DEFENDANT LTD FINANCIAL SERVICES

**10.  Paragraphs 1 through 9 are realleged as though fully set forth herein.**

11.  Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

12.  Defendant, LTD FINANCIAL SERVICES, is a Corporation that acts as a debt collector, as defined by § 1692a of the FDCPA.

13. Experian and Trans Union are credit reporting agencies within the meaning of the FCRA, 15 U.S.C. §    1681a(f).

14. Consumer credit report is a consumer report within the meaning of the FCRA, 15 U.S.C. § 1681a(d).

15. The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person may obtain a consumer credit report.

16. Such permissible purposes as defined by 15 U.S.C. § 1681b are generally, if the consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

17. Plaintiff has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from the Defendant LTD FINANCIAL SERVICES.

18. At no time did Plaintiff give his consent for Defendant LTD FINANCIAL SERVICES to acquire his consumer credit report from any credit reporting agency.

19. FCRA in 15 U.S.C. §1681a(r)(4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

20. The definition of "account" clearly does not include an account such as a credit card open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different. The Plaintiff never had any such account so there was obviously no permissible purpose for the credit pull.

21. On August 25, 2010 LTD FINANCIAL SERVICES obtained the Experian consumer credit report and also on August 19, 2010 obtained the Trans Union consumer report for the Plaintiff with no permissible purpose in violation of FCRA, 15 U.S.C. § 1681b. Plaintiff has no idea or indication as to what possible alleged account LTD FINANCIAL SERVICES could claim to have of his and is positive he had no account with LTD FINANCIAL SERVICES which would come under the definition of account in the FCRA in regard to permissible purpose.

22.   The action of Defendant LTD FINANCIAL SERVICES obtaining the consumer credit report of the Plaintiff with no permissible purpose or Plaintiff's consent was a violation of FCRA, 15 U.S.C. § 1681b(f) and an egregious violation of Plaintiff's right to privacy.

### RELIEF

Wherefore, Plaintiff demands judgment for damages against Defendant, LTD FINANCIAL SERVICES for statutory damages of $2000.00, punitive and statutory damages to be determined by this honorable court, attorney's fees, and
costs pursuant to 15 U.S.C. § 1681n(b) of the FCRA

### JURY DEMAND

Plaintiff, Philip York, demands trial by jury.

Philip York,

By _____
Plaintiff

Dated: October 31, 2012

Philip York
2456 e 72nd st
Chicago ,IL 60649
Ph (773)3195924
Pyork1969@gmail.com

**RECEIVED**

NOV 0 2 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| PHILIP YORK, | ) |
| Plaintiff, | 12cv8822 |
| vs. | Judge Joan B. Gottschall |
| | Magistrate Geraldine Soat Brown |
| CACH LLC | ) |
| Defendant. | ) |
| | ) |

## COMPLAINT

### I. Preliminary Statement

1.    This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq., as amended* and the *FAIR DEBT COLLECTIONS PRACTICES ACT (hereafter the "FDCPA"), 15 U.S.C. §1692 et seq., as amended*

### II. Jurisdiction and Venue

2.    Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337.

### III. Venue

3.    Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### IV. Parties

4.    Plaintiff, Philip York, is an adult individual and citizen of the city of Chicago, State of Illinois.

5.     Defendant, CACH LLC , is a business entity that regularly conducts business in the State of Illinois, and is a company whose principal place of business is located at 4340 Monaco 2nd flr Denver, CO 80237

## IV. FACTUAL ALLEGATIONS

6.     Plaintiff pulled his consumer credit reports from the three major credit reporting agencies EXPERIAN, TRANS UNION and EQUIFAX where he found entries by entities that he was unfamiliar with in the reports.

7.     Plaintiff determined that his consumer credit report had been obtained on various occasions by various entities he did not recognize and without his consent.

8.     Plaintiff found after examination of his EXPERIAN, TRANS UNION and EQUIFAX consumer credit reports that Defendant capital CACH LLC had obtained Plaintiff's TRANS UNION consumer credit report on 11/17/2011.

9.     Discovery of violation brought forth herein occurred in JULY of 2012 and is within the statute of limitations as defined in FCRA, 15 U.S.C. § 1681p. and FDCPA,  15 U.S.C. 1692K(d)

## Count I

## VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 WILLFUL NON-COMPLIANCE BY DEFENDANT CACH LLC

10.     **Paragraphs 1 through 9 are realleged as though fully set forth herein.**

11.   Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

12. Defendant, CACH LLC, is a Corporation that acts as a debt collector, as defined by § 1692a of the FDCPA

13. Experian is a credit reporting agency within the meaning of the FCRA, 15 U.S.C. §    1681a(f).

14. Consumer credit report is a consumer report within the meaning of the FCRA, 15    U.S.C. § 1681a(d).

15. The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person may obtain a consumer credit report.

16. Such permissible purposes as defined by 15 U.S.C. § 1681b are generally, if the    consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

17. Plaintiff has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from the Defendant CACH LLC.

18. At no time did Plaintiff give his consent for Defendant CACH LLC to acquire his consumer credit report from any credit reporting agency.

19. FCRA in 15 U.S.C. §1681a(r)(4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

20. The definition of "account" clearly does not include an account such as a credit card open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different. The Plaintiff never had any such account so there was obviously no permissible purpose for the credit pull.

21. On November 17, 2011 CACH LLC obtained the Trans Union consumer credit report for the Plaintiff with no permissible purpose in violation of FCRA, 15 U.S.C. § 1681b. Plaintiff has no idea or indication as to what possible alleged account CACH LLC could claim to have of his and is positive he had no account with CACH LLC which would come under the definition of account in the FCRA in regard to permissible purpose.

22. The action of Defendant CACH LLC obtaining the consumer credit report of the Plaintiff with no permissible purpose or Plaintiff's consent was a violation of FCRA, 15 U.S.C. § 1681b(f) and an egregious violation of Plaintiff's right to privacy.

23. **Paragraphs 1 through 9 are realleged as though fully set forth herein.**

### Count 2

### VIOLATION OF THE FAIR DEBT COLLECTIONS PRACTICES ACT (FDCPA), 15 U.S.C. §1692 FALSE OR MISLEADING REPRESENTATIONS IN COMMUNICATIONS BY CACH LLC

24. Exhibit A violates 15 U.S.C. §§1692e, 1692e(2)(A) and 1692e(10).

25. 15 U.S.C. §1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section....

26. 1692 (2)    The false representation of –
(A) the character, amount, or legal status of any debt.... [or]

27. 1692 (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

### RELIEF

Wherefore, Plaintiff demands judgment for damages against Defendant, CACH LLC for statutory damages of $2000.00, punitive and statutory damages to be determined by this honorable court, attorney's fees, and
costs pursuant to 15 U.S.C. § 1681n(b) of the FCRA AND 15 U.S.C. § 1692K (a) of the FDCPA

**JURY DEMAND**

Plaintiff, Philip York, demands trial by jury.

Philip York,

By _____
Plaintiff

Dated: October 31, 2012

Philip York
2456 e 72nd st
Chicago ,IL 60649
Ph (773)3195924
Pyork1969@gmail.com

pc5

**FILED**
12/11/2012
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

**RECEIVED**
NOV 0 2 2012
THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILIP YORK,                )
                            )
        Plaintiff,          )
                            )        12cv8823
    vs.                     )
                            )        Judge Matthew F. Kennelly
                            )        Magistrate Sidney I. Schenkier
NCO FINANCIAL SYSTEMS INC   )
                            )
        Defendant.          )

## COMPLAINT

### I. Preliminary Statement

1.    This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq.*, as amended and the *FAIR DEBT COLLECTIONS PRACTICES ACT (hereafter the "FDCPA"), 15 U.S.C. §1692 et seq., as amended*

### II. Jurisdiction and Venue

2.    Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337.

### III.    Venue

3.    Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### IV. Parties

4.    Plaintiff, Philip York, is an adult individual and citizen of the city of Chicago, State of Illinois.

Defendant, NCO FINANCIAL SYSTEMS, is a business entity that regularly conducts business in the State of Illinois, also has offices in the state and is a company whose principal place of business is located at 507 Prudential RD Horsham, PA 19044

## V. FACTUAL ALLEGATIONS

5.    Plaintiff pulled his consumer credit reports from the three major credit

reporting agencies EXPERIAN, TRANS UNION and EQUIFAX where he found entries

by entities that he was unfamiliar with in the reports.


6.    Plaintiff determined that his consumer credit report had been obtained on various

occasions by various entities he did not recognize and without his consent.


7.    Plaintiff found after examination of his EXPERIAN, TRANS UNION and

EQUIFAX consumer credit reports that Defendant capital NCO FINANCIAL SYSTEMS

had obtained Plaintiff's TRANS UNION consumer credit report on 6/16/2010 and 5/24/2012.


8.    Discovery of violation brought forth herein occurred in JULY of 2012 and is within

the statute of limitations as defined in FCRA, 15 U.S.C. § 1681p. and FDCPA,  15 U.S.C.

1692K(d)


### Count I


### VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 WILLFUL NON-COMPLIANCE BY DEFENDANT NCO FINANCIAL SYSTEMS


**9. Paragraphs 1 through 8 are realleged as though fully set forth herein.**


10.  Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).


11.  Defendant, NCO FINANCIAL SYSTEMS, is a CORPORATION that acts as a debt
collector, as defined by § 1692a of the FDCPA.

12. Experian is a credit reporting agency within the meaning of the FCRA, 15 U.S.C. §   1681a(f).

13. Consumer credit report is a consumer report within the meaning of the FCRA, 15 U.S.C. § 1681a(d).

14. The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person may obtain a consumer credit report.

15. Such permissible purposes as defined by 15 U.S.C. § 1681b are generally, if the consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

16. Plaintiff has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from the Defendant NCO FINANCIAL SYSTEMS

17. At no time did Plaintiff give his consent for Defendant NCO FINANCIAL SYSTEMS to acquire his consumer credit report from any credit reporting agency.

18. FCRA in 15 U.S.C. §1681a(r)(4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

19. (2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

20. The definition of "account" clearly does not include an account such as a credit card open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different. The Plaintiff never had any such account so there was obviously no permissible purpose for the credit pull.

21. On JUNE 10, 2010 and 5/24/2012 NCO FINANCIAL SYSTEMS obtained the Trans Union consumer credit report for the Plaintiff with no permissible purpose in violation of FCRA, 15 U.S.C. § 1681b. Plaintiff has no idea or indication as to what possible alleged account NCO FINANCIAL SYSTEMS could claim to have of his and is positive he had no account with NCO FINANCIAL SYSTEMS which would come under the definition of account in the FCRA in regard to permissible purpose.

22.  The action of Defendant NCO FINANCIAL SYSTEMS obtaining the consumer credit report of the Plaintiff with no permissible purpose or Plaintiff's consent was a violation of FCRA, 15 U.S.C. § 1681b(f) and an egregious violation of Plaintiff's right to privacy.

23.  **Paragraphs 1 through 8 are realleged as though fully set forth herein.**

## Count 2

### VIOLATION OF THE FAIR DEBT COLLECTIONS PRACTICES ACT (FDCPA), 15 U.S.C. §1692 FALSE OR MISLEADING REPRESENTATIONS IN COMMUNICATIONS NCO FINANCIAL SYSTEMS

24.  Exhibit A violates 15 U.S.C. §§1692e, 1692e(2)(A) and 1692e(10).

25.  15 U.S.C. §1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section....

26.  1692 (2)    The false representation of –
(A) the character, amount, or legal status of any debt.... [or]

27.  1692 (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

### RELIEF

Wherefore, Plaintiff demands judgment for damages against Defendant, NCO FINANCIAL SYSTEMS for statutory damages of $3000.00, punitive and statutory damages to be determined by this honorable court, attorney's fees, and
costs pursuant to 15 U.S.C. § 1681n(b) of the FCRA  AND  15 U.S.C. § 1692K (a) of the FDCPA

### JURY DEMAND

Plaintiff, Philip York, demands trial by jury.

Philip York

By _____
Plaintiff

Dated: October 31, 2012

Philip York
2456 e 72nd st
Chicago ,IL60649
Ph (773)3195924
Pyork1969@gmail.com

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

OCT 1 0 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

PHILIP YORK,                          )
                                      )
    Plaintiff,                     )
                                      )
    vs.                            )
                                      )
EQUABLE ASCENT FINANCIAL LLC,         )
                                      )
    Defendant.                     )

12CV8142
Judge Amy J. St. Eve
Mag. Judge Arlander Keys

## COMPLAINT

### I. Preliminary Statement

1.     This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq., as amended and the FAIR DEBT COLLECTIONS PRACTICES ACT (hereafter the "FDCPA"), 15 U.S.C. §1692 et seq., as amended*

### II. Jurisdiction and Venue

2.     Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337.

3.     Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### III. Parties

4.     Plaintiff, Philip York, is an adult individual and citizen of the city of Chicago, State of Illinois.

5.     Defendant, Equable Ascent Financial LLC, is a business entity that regularly conducts

business in the State of Illinois, and is a company whose principal place of business is located at 1120

w Lake Cook rd  Buffalo Grove,  IL 60089

## IV. FACTUAL ALLEGATIONS

6.     Plaintiff pulled his consumer credit reports from the three major credit

reporting agencies EXPERIAN, TRANS UNION and EQUIFAX where he found entries

by entities that he was unfamiliar with in the reports.

7.     Plaintiff determined that his consumer credit report had been obtained on various

occasions by various entities he did not recognize and without his consent.

8.     Plaintiff found after examination of his Experian Trans Union and Equifax

consumer credit reports that Defendant EQUABLE ASCENT FINANCIAL LLC had obtained

Plaintiff's Trans Union consumer credit report on August 2nd 2010, August 19th 2010  and

December 12TH 2011.

9.     Discovery of violations brought forth herein occurred in JULY of 2012 and is

within the statute of limitations as defined in FCRA, 15 U.S.C. § 1681p. and FDCPA,  15 U.S.C.

1692K(d)

### Count I

### VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 WILLFUL NON-COMPLIANCE BY DEFENDANT EQUABLE ASCENT FINANCIAL LLC.

**10. Paragraphs 1 through 9 are realleged as though fully set forth herein.**

11.  Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

12.  Defendant, EQUABLE ASCENT FINANCIAL LLC., ("NCO"), is a limited liability
company that acts as a debt collector, as defined by § 1692a of the FDCPA

13.  Trans Union is a credit reporting agency within the meaning of
the FCRA, 15 U.S.C. § 1681a(f).

14.  Consumer credit report is a consumer report within the meaning of the FCRA, 15 U.S.C. § 1681a(d).

15.  The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person may obtain a consumer credit report.

16.  Such permissible purposes as defined by 15 U.S.C. § 1681b are generally, if the consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

17.  Plaintiff has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from the Defendant EQUABLE ASCENT FINANCIAL LLC.

18.  At no time did Plaintiff give his consent for Defendant EQUABLE ASCENT FINANCIAL LLC
to acquire his consumer credit report from any credit reporting agency.

19.  FCRA in 15 U.S.C. §1681a(r)(4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 103(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

20.  The definition of "account" clearly does not include an account such as a credit card open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different. The Plaintiff never had any such account so there was obviously no permissible purpose for the credit pull.

21.  On August 2nd 2010, August 19th 2010 and December 12TH 2011
EQUABLE ASCENT FINANCIAL LLC obtained the Trans Union consumer credit report for the Plaintiff with no permissible purpose in violation of FCRA, 15 U.S.C. § 1681b. Plaintiff has no idea or indication as to what possible alleged account EQUABLE ASCENT FINANCIAL LLC could claim to have of his and is positive he had no account with EQUABLE ASCENT FINANCIAL LLC. which would come under the definition of account in the FCRA in regard to permissible purpose.

22.  The action of Defendant EQUABLE ASCENT FINANCIAL LLC. obtaining the consumer credit report of the Plaintiff with no permissible purpose or Plaintiff's consent was a violation of FCRA, 15 U.S.C. § 1681b(f) and an egregious violation of Plaintiff's right to privacy.

23.  **Paragraphs 1 through 9 are realleged as though fully set forth herein.**

**Count 2**

**VIOLATION OF THE FAIR DEBT COLLECTIONS PRACTICES ACT (FDCPA),
15 U.S.C. §1692 FALSE OR MISLEADING REPRESENTATIONS IN
COMMUNICATIONS  EQUABLE ASCENT FINANCIAL LLC.**

24.  Exhibit A violates 15 U.S.C. §§1692e, 1692e(2)(A) and 1692e(10).

25.  15 U.S.C. §1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means
in connection with the collection of any debt. Without limiting the general application of the
foregoing, the following conduct is a violation of this section....

(2)         The false representation of –
(A)      the character, amount, or legal status of any debt.... [or]

(10) The use of any false representation or deceptive means to collect or attempt to collect
any debt or to obtain information concerning a consumer....

**RELIEF**

Wherefore, Plaintiff demands judgment for damages against Defendant, EQUABLE ASCENT
FINANCIAL LLC. for statutory damages of $4000.00, punitive damages to be determined by this
honorable court, attorney's fees, and
costs pursuant to 15 U.S.C. § 1681n(b) of the FCRA  AND  15 U.S.C. § 1692K (a) of the FDCPA

**JURY DEMAND**

Plaintiff, Philip York, demands trial by jury.

Philip York,

By _____
                              plaintiff

Dated: September 27, 2012

Philip York
2456 e 72nd st
Chicago ,IL60649
Ph (773)319-5924
Pyork1969@gmail.com

Case: 1:12-cv-08824 Document #: 19-1 Filed: 02/19/13 Page 39 of 90 PageID #:95
Case: 1:12-cv-08142 Document #: 15-1 Filed: 01/07/13 Page 35 of 44 PageID #:74
Case: 1:12-cv-09790 Document #: 1 Filed: 12/07/12 Page 1 of 5 PageID #:1

RECEIVED

12-7-12

DEC - 7 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

PHILIP YORK,                          )
                                      )
        Plaintiff,                    )
                                      )
vs.                                   )
                                      )
                                      )    1:12-cv-09790
FMS INC                               )    Judge Charles R. Norgle, Sr
                                      )    Magistrate Judge Sheila M. Finnegan
        Defendant,                    )


## COMPLAINT

### I. Preliminary Statement

1.    This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq., as amended and the FAIR DEBT COLLECTIONS PRACTICES ACT (hereafter the "FDCPA"), 15 U.S.C. §1692 et seq., as amended*

### II. Jurisdiction and Venue

2.    Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337.

### III. Venue

3.    Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### IV. Parties

4.    Plaintiff, Philip York, is an adult individual and citizen of the city of Chicago, State of Illinois.

5.    Defendant, FMS INC, is a business entity that regularly conducts business in the State

of Illinois, and is a company whose Registered Agent ILLINOIS CORPORATION SERVICE CO. is

located at 801 Adlai Stevenson drive Springfeild, IL 62703

## V. FACTUAL ALLEGATIONS

6.    Plaintiff pulled his consumer credit reports from the three major credit

reporting agencies EXPERIAN, TRANS UNION and EQUIFAX where he found entries

by entities that he was unfamiliar with in the reports.

7.    Plaintiff determined that his consumer credit report had been obtained on various

occasions by various entities he did not recognize and without his consent.

8.    Plaintiff found after examination of his EXPERIAN, TRANS UNION and

EQUIFAX consumer credit reports that Defendant capital FMS INC had obtained Plaintiff's

TRANS UNION consumer credit report on 12/7/2011.

9.    Discovery of violation brought forth herein occurred in JULY of 2012 and is within

the statute of limitations as defined in FCRA, 15 U.S.C. § 1681p. and FDCPA,  15 U.S.C.

1692K(d)

## Count I

## VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 WILLFUL NON-COMPLIANCE BY DEFENDANT FMS INC

**10. Paragraphs 1 through 9 are realleged as though fully set forth herein.**

11. Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).

12. Defendant, FMS INC, is a Corporation that acts as a debt collector, as defined by § 1692a of the FDCPA

13. Equifax is a credit reporting agency within the meaning of
the FCRA, 15 U.S.C. §    1681a(f).

14. Consumer credit report is a consumer report within the meaning of the FCRA, 15 U.S.C. § 1681a(d).

15. The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person may obtain a consumer credit report.

16. Such permissible purposes as defined by 15 U.S.C. § 1681b are generally, if the consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

17. Plaintiff has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from the Defendant FMS INC.

18. At no time did Plaintiff give his consent for Defendant FMS INC to acquire his consumer credit report from any credit reporting agency.

19. FCRA in 15 U.S.C. §1681a(r)(4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

20. The definition of "account" clearly does not include an account such as a credit card open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different. The Plaintiff never had any such account so there was obviously no permissible purpose for the credit pull.

21. On December 7, 2011 FMS INC obtained the TRANS UNION consumer credit report for the Plaintiff with no permissible purpose in violation of FCRA, 15 U.S.C. § 1681b. Plaintiff has no idea or indication as to what possible alleged account FMS INC could claim to have of his and is positive he had no account with FMS INC which would come under the definition of account in the FCRA in regard to permissible purpose.

22. The action of Defendant FMS INC obtaining the consumer credit report of the Plaintiff with no permissible purpose or Plaintiff's consent was a violation of FCRA, 15 U.S.C. § 1681b(f) and an egregious violation of Plaintiff's right to privacy.

23. **Paragraphs 1 through 9 are realleged as though fully set forth herein.**

### Count 2

### VIOLATION OF THE FAIR DEBT COLLECTIONS PRACTICES ACT (FDCPA), 15 U.S.C. §1692 FALSE OR MISLEADING REPRESENTATIONS IN COMMUNICATIONS BY FMS INC

24. Exhibit A violates 15 U.S.C. §§1692e, 1692e (2)(A) and 1692e (10).

25. 15 U.S.C. §1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section....

26. 1692 (2)    The false representation of –
(A) the character, amount, or legal status of any debt.... [or]

27. 1692 (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

### RELIEF

Wherefore, Plaintiff demands judgment for damages against Defendant, FMS INC for statutory damages of $ 2000.00, punitive and statutory damages to be determined by this honorable court, attorney's fees, and
costs pursuant to 15 U.S.C. § 1681n(b) of the FCRA  AND  15 U.S.C. § 1692K (a) of the FDCPA

## JURY DEMAND

Plaintiff, Philip York, demands trial by jury.

Philip York,

By _____
Plaintiff

Dated: December 5, 2012

Philip York
2456 e 72nd st
Chicago ,IL 60649
Ph (773)3195924
Pyork1969@gmail.com

*MB*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

**RECEIVED**

Dec 7 2012
DEC - 7 2012

THOMAS G. BRUTON
CLERK, U.S. DISTRICT COURT

| | |
|---|---|
| PHILIP YORK, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | |
| | ) |
| CREDIT PROTECTION ASSOCIATION | ) |
| LP | ) |
| | ) |
| Defendant, | ) |

1:12-cv-09791
Judge Edmond E. Chang
Magistrate Judge Michael T. Mason

## COMPLAINT

### I. Preliminary Statement

1.     This is an action for damages brought by an individual consumer against the Defendant for violations of the Fair Credit Reporting Act (hereafter the "FCRA"), 15 U.S.C. §1681 *et seq.*, as amended and the *FAIR DEBT COLLECTIONS PRACTICES ACT (hereafter the "FDCPA"), 15 U.S.C. §1692 et seq., as amended*

### II. Jurisdiction and Venue

2.     Jurisdiction of this Court arises under 15 U.S.C. § 1681p, 28 U.S.C. §§ 1331, 1337.

### III. Venue

3.     Venue lies properly in this district pursuant to 28 U.S.C. § 1391(b).

### IV. Parties

4.     Plaintiff, Philip York, is an adult individual and citizen of the city of Chicago, State of Illinois.

5.    Defendant, CREDIT PROTECTION ASSOCIATION LP, is a business entity that

regularly conducts business in the State of Illinois, and is a company whose principal place of

business is located at 13355 NOEL RD 21ST FLR  DALLAS, TX 75240

## V. FACTUAL ALLEGATIONS

6.    Plaintiff pulled his consumer credit reports from the three major credit

reporting agencies EXPERIAN, TRANS UNION and EQUIFAX where he found entries

by entities that he was unfamiliar with in the reports.

7.    Plaintiff determined that his consumer credit report had been obtained on various

occasions by various entities he did not recognize and without his consent.

8.    Plaintiff found after examination of his EXPERIAN, TRANS UNION and

EQUIFAX consumer credit reports that Defendant capital CREDIT PROTECTION

ASSOCIATION LP had obtained Plaintiff's TRANS UNION consumer credit report on 3/17/2012

AND 8/20/2010.

9.    Discovery of violation brought forth herein occurred in JULY of 2012 and is within

the statute of limitations as defined in FCRA, 15 U.S.C. § 1681p. and FDCPA,  15 U.S.C.

1692K(d)


### Count I


### VIOLATION OF THE FAIR CREDIT REPORTING ACT (FCRA), 15 U.S.C. §1681 WILLFUL NON-COMPLIANCE BY DEFENDANT CREDIT PROTECTION ASSOCIATION LP


**10.  Paragraphs 1 through 9 are realleged as though fully set forth herein.**

11.  Plaintiff is a consumer within the meaning of the FCRA, 15 U.S.C. § 1681a(c).


12.  Defendant, CREDIT PROTECTION ASSOCIATION LP, is a Corporation that acts
as a debt collector, as defined by § 1692a of the FDCPA


13.  Equifax is a credit reporting agency within the meaning of
the FCRA, 15 U.S.C. §    1681a(f).

Case: 1:12-cv-08824 Document #: 19-1 Filed: 02/19/13 Page 46 of 90 PageID #:102
Case: 1:12-cv-08142 Document #: 15-1 Filed: 01/07/13 Page 42 of 44 PageID #:81
Case: 1:12-cv-09791 Document #: 1 Filed: 12/07/12 Page 3 of 5 PageID #:3

14. Consumer credit report is a consumer report within the meaning of the FCRA, 15 U.S.C. § 1681a(d).

15. The FCRA, 15 U.S.C. § 1681b defines the permissible purposes for which a person may obtain a consumer credit report.

16. Such permissible purposes as defined by 15 U.S.C. § 1681b are generally, if the consumer makes application for credit, makes application for employment, for underwriting of insurance involving the consumer, or is offered a bona fide offer of credit as a result of the inquiry.

17. Plaintiff has never had any business dealings or any accounts with, made application for credit from, made application for employment with, applied for insurance from, or received a bona fide offer of credit from the Defendant CREDIT PROTECTION ASSOCIATION LP.

18. At no time did Plaintiff give his consent for Defendant CREDIT PROTECTION ASSOCIATION LP to acquire his consumer credit report from any credit reporting agency.

19. FCRA in 15 U.S.C. §1681a(r)(4) states: The terms "account" and "electronic fund transfer" have the same meanings as in section 1693a of this title.

(2) the term "account" means a demand deposit, savings deposit, or other asset account (other than an occasional or incidental credit balance in an open end credit plan as defined in section 1602(i) of this Act), as described in regulations of the Board, established primarily for personal, family, or household purposes, but such term does not include an account held by a financial institution pursuant to a bona fide trust agreement;

20. The definition of "account" clearly does not include an account such as a credit card open end credit account but does include a demand deposit account, savings deposit or other asset account which is wholly different. The Plaintiff never had any such account so there was obviously no permissible purpose for the credit pull.

21. On March 17, 2012 and August 20, 2010 CREDIT PROTECTION ASSOCIATION LP obtained the TRANS UNION consumer credit report for the Plaintiff with no permissible purpose in violation of FCRA, 15 U.S.C. § 1681b. Plaintiff has no idea or indication as to what possible alleged account CREDIT PROTECTION ASSOCIATION LP could claim to have of his and is positive he had no account with CREDIT PROTECTION ASSOCIATION LP which would come under the definition of account in the FCRA in regard to permissible purpose.

22. The action of Defendant CREDIT PROTECTION ASSOCIATION LP obtaining the consumer credit report of the Plaintiff with no permissible purpose or Plaintiff's consent was a violation of FCRA, 15 U.S.C. § 1681b(f) and an egregious violation of Plaintiff's right to privacy.

23. **Paragraphs 1 through 9 are realleged as though fully set forth herein.**

**Count 2**

**VIOLATION OF THE FAIR DEBT COLLECTIONS PRACTICES ACT (FDCPA), 15 U.S.C. §1692 FALSE OR MISLEADING REPRESENTATIONS IN COMMUNICATIONS BY CREDIT PROTECTION ASSOCIATION LP**

24. Exhibit A violates 15 U.S.C. §§1692e, 1692e (2)(A) and 1692e (10).

25. 15 U.S.C. §1692e provides:

A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section....

26. 1692 (2)   The false representation of –
(A) the character, amount, or legal status of any debt.... [or]

27. 1692 (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer....

**RELIEF**

Wherefore, Plaintiff demands judgment for damages against Defendant, CREDIT PROTECTION ASSOCIATION LP for statutory damages of $ 3000.00, punitive and statutory damages to be determined by this honorable court, attorney's fees, and costs pursuant to 15 U.S.C. § 1681n(b) of the FCRA AND 15 U.S.C. § 1692K (a) of the FDCPA

## JURY DEMAND

Plaintiff, Philip York, demands trial by jury.

Philip York,

By _____
Plaintiff

Dated: December 5, 2012

Philip York
2456 e 72nd st
Chicago ,IL 60649
Ph (773)3195924
Pyork1969@gmail.com

# EXHIBIT
# 3

--- F.Supp.2d ----, 2012 WL 6644278 (E.D.N.Y.)
**(Cite as: 2012 WL 6644278 (E.D.N.Y.))**

Only the Westlaw citation is currently available.

United States District Court,
E.D. New York.
Patrick SAUNDERS, Plaintiff,
v.
NCO FINANCIAL SYSTEMS, INC., Defendant.

No. 12–cv–1750 BMC.
Dec. 19, 2012.

**Background:** Debtor brought action against debt collector, alleging violations of the Fair Debt Collection Practices Act (FDCPA) and the Telephone Consumer Protection Act (TCPA). Defendant moved for summary judgment.

**Holdings:** The District Court, Cogan, J., held that:
(1) debtor expressly consented to debt collector's use of automated telephone system to contact debtor on his cell phone, within the meaning of the TCPA;
(2) debtor's letters to debt collector did not revoke his prior consent to use of debtor's cell phone number;
(3) debt collector's failure to send validation notice to debtor's correct address did not violate the FDCPA; and
(4) debt collector did not violate FDCPA by calling debtor at unusual place or time or place.

Motion granted.

West Headnotes

**[1] Telecommunications 372 ⟜1053**

372 Telecommunications
   372IV Wireless and Mobile Communications
      372k1053 k. Illegal or Improper Purposes.
Most Cited Cases
   Debtor expressly consented to debt collector's use of automated telephone system to contact debtor on his cell phone, within the meaning of the Telephone Consumer Protection Act (TCPA), where he listed only his cell phone number with the creditor on the underlying account. Telephone Consumer Protection Act of 1991, § 3(b)(1)(A)(iii), 47 U.S.C.A. § 227(b)(1)(A)(iii).

**[2] Telecommunications 372 ⟜1053**

372 Telecommunications
   372IV Wireless and Mobile Communications
      372k1053 k. Illegal or Improper Purposes.
Most Cited Cases
   Debtor's letters to debt collector, demanding that debt collector stop calling him on his cell phone number, did not revoke his prior express consent to debt collector's use of automated telephone system to call debtor's cell phone, pursuant to the Telephone Consumer Protection Act (TCPA), where the letters failed to give debt collector sufficient information to identify the account. Telephone Consumer Protection Act of 1991, § 3(b)(1)(A)(iii), 47 U.S.C.A. § 227(b)(1)(A)(iii).

**[3] Telecommunications 372 ⟜1053**

372 Telecommunications
   372IV Wireless and Mobile Communications
      372k1053 k. Illegal or Improper Purposes.
Most Cited Cases
   The Telephone Consumer Protection Act (TCPA) does not allow withdrawal of a debtor's voluntarily-given, prior express consent to call a cell phone number. Telephone Consumer Protection Act of 1991, § 3(b)(1)(A)(iii), 47 U.S.C.A. § 227(b)(1)(A)(iii).

**[4] Antitrust and Trade Regulation 29T ⟜214**

29T Antitrust and Trade Regulation
   29TIII Statutory Unfair Trade Practices and Consumer Protection
      29TIII(C) Particular Subjects and Regulations
         29Tk210 Debt Collection
            29Tk214 k. Communications, Repres-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 6644278 (E.D.N.Y.)
**(Cite as: 2012 WL 6644278 (E.D.N.Y.))**

entations, and Notices; Debtor's Response. Most Cited Cases

Debt collector's failure to send validation notice to debtor's correct address did not violate the Fair Debt Collection Practices Act (FDCPA), where validation notice was sent to the address that debtor provided to creditor for his account, and debtor failed to provide sufficient information to debt collector that would have alerted it that he did not want notices sent to the address he had provided. 15 U.S.C. § 1692(a).

**[5] Antitrust and Trade Regulation 29T ☞214**

29T Antitrust and Trade Regulation
    29TIII Statutory Unfair Trade Practices and Consumer Protection
        29TIII(C) Particular Subjects and Regulations
            29Tk210 Debt Collection
                29Tk214 k. Communications, Representations, and Notices; Debtor's Response. Most Cited Cases

Debt collector did not violate Fair Debt Collection Practices Act (FDCPA) by calling debtor at unusual place or time or place, where it was undisputed that all the calls were made during normal business hours or early evening, and all the calls were made to the cell phone number that debtor had provided to the creditor. Fair Debt Collection Practices Act, § 805(a)(1), 15 U.S.C.A. § 1692c(a)(1).

**[6] Federal Civil Procedure 170A ☞2753**

170A Federal Civil Procedure
    170AXX Sanctions
        170AXX(A) In General
            170Ak2751 Constitutional, Statutory or Regulatory Provisions
                170Ak2753 k. Purpose. Most Cited Cases

The purpose of Rule 11 is to deter baseless filings in district court and streamline the administration and procedure of the federal courts. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

**[7] Federal Civil Procedure 170A ☞2769**

170A Federal Civil Procedure
    170AXX Sanctions
        170AXX(B) Grounds for Imposition
            170Ak2767 Unwarranted, Groundless or Frivolous Papers or Claims
                170Ak2769 k. Reasonableness or Bad Faith in General; Objective or Subjective Standard. Most Cited Cases

Where the possibility of sanctions under Rule 11 is raised by the court sua sponte, the appropriate standard is subjective bad faith. Fed.Rules Civ.Proc.Rule 11, 28 U.S.C.A.

Jeanne Lahiff, Weisberg & Meyers LLC, for Plaintiff.

Aaron R. Easley, Sessions Fishman Nathan Israel LLC, for Defendant.

### *MEMORANDUM DECISION AND ORDER*
COGAN, District Judge.

**\*1** The legislative history of both the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.* and the Telephone Communications Practice Act ("TCPA"), 47 U.S.C. § 227 *et seq.* discloses a well-based concern by Congress to reduce abusive practices that collection companies had employed against debtors and consumers. Like any statutes, however, remedial laws can themselves be abused and perverted into money-making vehicles for individuals and lawyers. This may be one of those cases. The evidence in the record before me suggests that plaintiff may have engaged in a game of cat and mouse with first his creditor and then its collection company, obscuring his identity so that there was no way the collection company could know with whom it was dealing, all for the purpose of creating this lawsuit. I am granting defendant's motion for summary judgment, and I am requiring plaintiff and his attorney to show cause why monetary sanctions should not be imposed under Rule 11 of the Federal Rules of Civil Procedure.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 6644278 (E.D.N.Y.)
**(Cite as: 2012 WL 6644278 (E.D.N.Y.))**

### BACKGROUND

The following facts are not in dispute. On or about August 27, 2009, plaintiff opened an account with Public Access to Court Electronic Records ("PACER"), which is an electronic public access service that allows users to obtain case and docket information from federal courts via the Internet. In opening the account, plaintiff did not use his own name. Instead, he listed the account holder as "PLS" (apparently those are his initials). In addition, although PACER requires an address to open an account, plaintiff did not give his correct address in Brooklyn. Instead, he provided his mother's address in Glenn Dale, Maryland even though he had not lived there for almost 15 years. Finally, as PACER requires a contact telephone number, plaintiff listed his cell phone number as the only number on the application.

PACER charges on a per-page retrieval basis, and plaintiff incurred charges of $36.35. He quickly defaulted on this debt, and PACER turned plaintiff's account over to defendant NCO Financial Systems, Inc. for collection on October 6, 2010. Five days later, on October 11, 2010, NCO sent a "validation notice," that is, a notice pursuant to 15 U.S.C. § 1692g, that the debt had been assigned to it for collection, and advising the account debtor of his rights, to the only address plaintiff had given it—the Maryland address.[FN1] Plaintiff never received that letter. Three days after sending the letter, NCO began calling the number on file in an effort to reach the responsible party, "PLS." At least some of the calls were automated, recorded voice calls.

Plaintiff wrote to NCO on March 16, 2011. In this letter, he recited that he had received two automated calls on that day, and that he was writing "pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. 1692(g)," to advise NCO "that your claim is disputed and validation is requested." Plaintiff requested that NCO stop contacting him by phone "about the above-referenced debt" and insisted that all future communications with plaintiff

must be done in writing and sent to the address noted in the letter. The letter further requested identification of the creditor, the amount of the debt, and the original account number.

**\*2** Significantly, the letter did not disclose or mention in any way that plaintiff was writing with reference to an account in the name of "PLS," nor did it disclose that the address of the account debtor was in Maryland. In addition, the letter did not contain the telephone number that NCO had been calling. NCO checked its records for an account under plaintiff's name or at the address on his letter—his home address in Brooklyn—and could not locate the account. NCO therefore wrote back to plaintiff on April 22, 2011, advising plaintiff that it could not find an account in his name, and asking him to supply further information such as his social security number and the telephone number at which it was allegedly calling plaintiff.

Plaintiff responded by letter dated April 27, 2011. He identified the dates and times at which he had received automated calls since sending his initial letter and the NCO number which the automated caller asked him to call in order to reach "Anthony Davis with NCO." Plaintiff again demanded cessation. Once again, however, he did not disclose the name of the account, the address of the account, or the telephone number to which the calls were being made. In fact, plaintiff expressly declined to provide any additional information, saying he did not feel "comfortable," and that he was "reserve[ing] the right to seek any remedies allowed by law to resolve this matter."

On May 10, 2011, NCO wrote back, again advising plaintiff that it still could not identify a debtor named Patrick Saunders with an address in Brooklyn, and again asking for information as to the identity of the original creditor or the account number, and, again, the telephone number at which plaintiff was being called.

Plaintiff failed to respond to this letter. Instead, he filed a complaint with the New York City De-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 6644278 (E.D.N.Y.)
**(Cite as: 2012 WL 6644278 (E.D.N.Y.))**

partment of Consumer Affairs ("NYCDCA"). NYCDCA contacted NCO, but with the same absence of accurate identifying information, NCO still could not locate the account, and it so advised NYCDCA.

Finally, on May 23, 2011, plaintiff called NCO and gave a customer service representative the actual address and telephone number on the account. The representative thereupon located the account. Plaintiff advised that he would be sending a fax to confirm his request that NCO cease and desist collection efforts, but he never sent the fax. Instead, he brought this lawsuit.

## DISCUSSION
### I. Summary Judgment Standard

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). Material facts are those that "affect the outcome of the suit under the governing law," and "[a]n issue of fact is 'genuine' if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Shade v. Hous. Auth. of New Haven,* 251 F.3d 307, 314 (2d Cir.2001) (citation omitted). In determining whether there is a genuine issue as to any material fact, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986).

**\*3** The moving party bears the burden of "informing the district court of the basis for its motion, and identifying those portions of [the record] ... which it believes demonstrates the absence of a genuine issue of fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). If the moving party meets its initial burden, the non-moving party must then come forward with "specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(c); *See Carlton v. Mystic Transp., Inc.,* 202 F.3d 129, 133 (2d Cir.2000). "The mere existence of a

scintilla of evidence in support of the [non-movant's] position will be insufficient." *Anderson,* 477 U.S. at 248. Rather, the non-movant must offer "concrete evidence from which a reasonable juror could return a verdict in [its] favor." *Id.* at 252.

### II. The TCPA Claim

[1] The TCPA prohibits any person from calling a cell phone number "using any automatic dialing system or an artificial or prerecorded voice" unless that person has "prior express consent of the called party." 47 U.S.C. § 227(b)(1)(A)(iii). Here, plaintiff concedes that by listing only his cell phone number with PACER, he gave both PACER and NCO, its collection agent, "prior express consent." This is a concession that plaintiff must make, as the authorities are almost unanimous that voluntarily furnishing a cellphone number to a vendor or other contractual counterparty constitutes express consent. *See Soppet v. Enhanced Recovery Co. LLC,* 679 F.3d 637 (7th Cir.2012); *Meyer v. Portfolio Recovery Associates, LLC,* 696 F.3d 943 (9th Cir.2012); *Moore v. Firstsource Advantage, LLC,* No. 07–CV–770, 2011 WL 4345703 (Sept. 15, 2011 W.D.N.Y..); *Starkey v. Firstsource Advantage, LLC,* No. 07–CV–662A(Sr), 2010 WL 2541756 (Mar. 11, 2010 W.D.N.Y..); FCC 07–232 Declaratory Ruling (Dec. 28, 2007).

[2] Instead, plaintiff contends that his letters to NCO of March 16, 2011 and April 27, 2011 constituted revocations of his prior consent because he therein told NCO to stop calling him. This argument fails both factually and legally.

Factually, the theory fails because neither letter gave NCO sufficient information to identify the account. All plaintiff had to write was that NCO should look for an account named "PLS" or at least give the address or cell phone number that he had given PACER when registering for his account. For whatever reason, he chose not to. The fact that Patrick Saunders of Brooklyn wished to revoke prior consent was meaningless; it may as well have been John Smith of Tacoma making the request. No

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 6644278 (E.D.N.Y.)
**(Cite as: 2012 WL 6644278 (E.D.N.Y.))**

amount of effort on NCO's part would have disclosed that Patrick Saunders of Brooklyn was actually PLS of Maryland.

Plaintiff's only response to this is to note that in his PACER application, plaintiff listed the "contact person" at PLS as "P. Saunders." However, the record before me is undisputed that the "contact person" information does not appear in a searchable field that NCO can access. One has to first know who the account debtor is before one can find any particular contact at that account debtor. NCO can search by the name of the account debtor, his address, or his telephone number, but not by the particular contact person at the account debtor.

*4 Plaintiff's entire case is premised on the assumption that NCO could or should have found his name based on the contact person listing of "P. Saunders." But I see no reason why NCO must alter its search system to do more than it did. First, plaintiff had complete knowledge of the account information and could easily have identified it if he had wanted to. Second, the fact that the management of an account debtor may list an employee or subordinate as the "contact person" for the account does not mean that the name of the subordinate is crucial identifying information that a collection agency must match with a debtor who, for undisclosed reasons, declines to identify the account with which he is connected. Whether this is a deliberate problem that plaintiff created or one that he simply neglected to fix, the problem was entirely of his own making, not that of NCO.

Plaintiff's argument is particularly misplaced here because he did not list "Patrick Saunders" as the contact person, so that even if NCO had the capacity to search that field, it would not have found him. "P. Saunders" could be Patrick Saunders, but it could also be Peter Saunders, Phil, Phillip, or Phillipe Saunders, Paul Saunders, Pam or Pamela Saunders, and a host of other male and female names that start with "P." Moreover, "Saunders" is not a name like "Zhiritofosky." There could easily be more than one account debtor with a contact per-

son of "P. Saunders." And even if NCO had been able to search the contact person field and see a "P. Saunders," it would have no reason to match that account debtor with plaintiff, because the account debtor, PLS, was in Maryland, and plaintiff's letters showed his address to be in Brooklyn.

[3] In addition, plaintiff's claim fails legally because, like the Court in *Gager v. Dell Financial Services, LLC,* No. 3:11-CV-2115, 2012 WL 1942079 (W.D.Pa. May 29, 2012), I see nothing in the TCPA that gives a consumer two bites at the apple. That is, there is no provision in the TCPA, unlike the FDCPA, *see* 15 U.S.C. § 1692c(c), that allows withdrawal of a voluntarily-given, prior express consent to call a cell phone number. Nothing compels a consumer to list his cell phone number with his counterparty when he opens an account, or to open an account at all, but if that is the number he chooses to provide, then he cannot complain about being called at that number.

It is not as if we are dealing with a fundamental constitutional right where a waiver may, under limited circumstances, be withdrawn. *See e.g., Davis v. United States,* 512 U.S. 452, 114 S.Ct. 2350, 129 L.Ed.2d 362 (determining that if a criminal suspect waives his right to counsel after receiving Miranda warnings, law enforcement officers are free to question him, but if he requests counsel at any time during the interview, the suspect may not be further questioned until counsel has been made available). This is a narrow statutory right not to receive automated calls on a cellphone. A consumer that voluntarily gives it up need not have an opportunity to change his mind later; he has withdrawn from the protection of the statute. He is no worse off than all other consumers were before passage of the statute, because he has opted out of the statute. Nor is there anything unduly harsh about this conclusion; the consumer, if he is a debtor, remains protected from harassment by the FDCPA.

*5 I recognize that unlike the Court in *Gager,* other district courts have ruled otherwise, some holding that consent can be withdrawn as long as

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 6644278 (E.D.N.Y.)

**(Cite as: 2012 WL 6644278 (E.D.N.Y.))**

the request to withdraw is in writing, *see e.g., Moore v. Firstsource Advantage, LLC,* No. 07–CV–770, 2011 WL 4345703 (Sept. 15, 2011 W.D.N.Y..); *Starkey v. Firstsource Advantage, LLC,* No. 07–CV–662A, 2010 WL 2541756 (Mar. 11, 2010 W.D.N.Y..), and others holding that an oral direction to withdraw is sufficient. *See e.g., Adamcik v. Credit Control Services, Inc.,* 832 F.Supp.2d 744 (W.D.Tex.2011). I respectfully disagree with both lines of cases. The reason there is a split among these authorities is because the statute provides for neither result, so those courts that wish to permit withdrawal of consent are forced to apply their own policy preferences. If Congress wishes to change the statute, it can—it has shown in the FDCPA that it knows how to provide for withdrawal of consent when it wants to—but I do not think it is for the courts to read a substantive right into a statute when it is quite conspicuously missing.

I therefore conclude that summary judgment must be granted to NCO on plaintiff's TCPA claim.

## II. FDCPA Claims

Plaintiff's FDCPA claims are predicated on the same erroneous assumption as his TCPA claim—that, notwithstanding his refusal to disclose sufficient particulars to permit identification of the account, NCO had a duty to send a validation notice to his Brooklyn address, and to stop calling him based on the letters he wrote using his own name instead of the account name, and from his Brooklyn address instead of the Maryland address. Because I reject plaintiff's premise, each of his FDCPA claims fails as well.

[4] First, plaintiff contends that NCO did not "properly" send a validation notice, which violated 15 U.S.C. § 1692(a), because it never sent a validation notice to his Brooklyn address. The validation notice was sent to the address that defendant had for the account, which was the address that plaintiff had provided. Nothing in plaintiff's letters of March 16, 2011 and April 22, 2011 should have alerted defendant to the fact that the address that plaintiff had listed on the account was not the address to which

he wanted the validation notice sent. The notice was properly sent, and plaintiff's claim is therefore rejected.

[5] Second, plaintiff claims that NCO violated 15 U.S.C. § 1692c(a)(1) by calling him at an "unusual time or place or a time or place known or which should have been known to be inconvenient." The claim is frivolous. Plaintiff does not even say what was unusual or inconvenient about the calls. There is no dispute that all of the calls were made during business hours or early evening, and since the calls were to the cell phone that plaintiff had designated, they were going to be received at whatever place plaintiff was physically present when his cell phone rang.

Apparently, although not expressly, plaintiff is arguing that since his letters of March 16, 2011 and April 22, 2011 and his phone call of May 23, 2011 demanded that NCO stop calling, every call that NCO made after each of those contacts, all of which he received at his home, was "inconvenient." As to the letters, I have already held that NCO had no duty to read plaintiff's mind and match his letters to an account that listed a different name and address. Moreover, even if NCO had done so, there is nothing in the letters that complains about the calls being received at an inconvenient time or place. The letters demanded that NCO stop calling Patrick Saunders in Brooklyn. Failure to comply with a cease and desist demand—if an account debtor provided sufficient information—would violate § 1692c(c), but not every violation of that section is a violation of § 1692c(a)(1). Section 1692c(a)(1) focuses on the disregard of a known or obvious time or place restriction—like calling someone at midnight. *See* 15 U.S.C. § 1692c(a)(1) ("In the absence of knowledge of circumstances to the contrary, a debt collector shall assume that the convenient time for communicating with a consumer is after 8 o'clock antemeridian and before 9 o'clock post-meridian, local time at the consumer's location.").

*6 The May 23, 2011 telephone call, when

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 6644278 (E.D.N.Y.)
**(Cite as: 2012 WL 6644278 (E.D.N.Y.))**

plaintiff finally provided enough information so that NCO could determine that "PLS" was his pseudonym, suffers from the same lack of a demanded restriction as to time or place. More importantly, there is no factual dispute that plaintiff told the NCO agent that he would confirm his request in a fax, and plaintiff never sent the fax. From the perspective of a reasonable collection company, NCO received a phone call from someone named Patrick Saunders of Brooklyn who orally contended that he was actually PLS of Maryland, and that he would send a fax confirming it. The story was sufficiently unusual, even bizarre, that NCO was perfectly reasonable in not acting on the oral advice until it received the promised written confirmation, especially since a fax would have been received in minutes. Once again, plaintiff's problem was of his own making, as he never followed through with that written confirmation.

Finally, plaintiff's claim under the FDCPA's catch-all provision, § 1692e(1), which prohibits "false or deceptive statements," is merely a combination of his other claims. NCO did nothing false or deceptive here; if there was any deception, it was what may have been plaintiff's deliberate refusal to give NCO the information it needed to link him to the account. The claim is thus without merit.

### III. Rule 11 Considerations

[6][7] Rule 11 (b) of the Federal Rules of Civil Procedure states that an attorney who presents "a pleading, written motion, or other paper" to the court thereby "certifies that to the best of [his] ... knowledge, information, and belief formed after an inquiry reasonable under the circumstances," the filing is: (1) not presented for any improper purpose, "such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"; (2) "warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law"; and (3) either supported by evidence or "will likely have evidentiary support after a reasonable opportunity for further investigation or discovery."

Fed.R.Civ.P. 11(b). The purpose of Rule 11 "is to deter baseless filings in district court and ... streamline the administration and procedure of the federal courts." *Cooter & Gell v. Hartmarx Corp.,* 496 U.S. 384, 393, 110 S.Ct. 2447, 2454, 110 L.Ed.2d 359 (1990). Where the possibility of sanctions is raised by the court *sua sponte,* the appropriate standard is subjective bad faith. *In re Pennie & Edmonds LLP,* 323 F.3d 86 (2d Cir.2003).

I have a serious concern that this lawsuit reflects an attempt by plaintiff and/or his attorney to manipulate the law for an improper purpose. The record before me clearly raises an issue as to whether plaintiff deliberately misled NCO for the purpose of creating a claim against it under the FDCPA and the TCPA that could be settled for nuisance value plus attorneys' fees. Primarily, it would have been so easy for plaintiff, in his March 16, 2011 letter, to have simply stated that he was PLS of Glenn Dale, Maryland, and have included his telephone number. He had no discernible reason not to provide NCO with his telephone number—there could be no question of privacy—because he knew NCO already had that number. I have no doubt on this record that NCO would have ceased calls to him if he had just given the proper contact information. The inference of improper intent is furthered by the fact that plaintiff refused to give this information when NCO specifically asked him for it.

**\*7** There is other circumstantial evidence suggesting bad faith. First, although claims under the FDCPA are evaluated under the "least sophisticated consumer" standard, *see Ehrich v. I.C. System, Inc.,* 681 F.Supp.2d 265, 268–69 (E.D.N.Y.2010), plaintiff is certainly not that. I don't know if plaintiff has legal training, but his letters of March 16, 2011 and April 22, 2011 strongly suggest that they were written by someone who does. Laymen generally do not write things like:

> Be advised that this is not a refusal to pay, but a notice sent pursuant to the Fair Debt Collection Practices Act, 15 U.S.C. 1692(g) that your claim is disputed and validation is requested.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Page 8

--- F.Supp.2d ----, 2012 WL 6644278 (E.D.N.Y.)

**(Cite as: 2012 WL 6644278 (E.D.N.Y.))**

...

I respectfully request that your offices provide me with competent evidence that I have any legal obligation to pay you.

...

[After disclosing medical information relating to plaintiff]. Information about my medical condition is strictly confidential. You are not authorized to release this information to any 3rd party without my express written prior consent.

Plaintiff's letter of April 27, 2011 has the same, professionally-crafted tone; yet, as noted above, it still declined to answer NCO's questions that would have identified that plaintiff was writing about the PLS account. Moreover, the fact that this case involves a delinquent PACER account suggests some legal background or advice on plaintiff's part.

Second, when asked at his deposition why he listed his mother's address with PACER as the contact address instead of his own, plaintiff gave testimony that was at least wrong and very possibly false. Plaintiff testified that he did this because the credit card that he was using had his mother's Maryland address as the billing address, and thus he had no choice but to use that address. That is not true. The PACER registration page has separate sections for "Personal Information," including the applicant's address, and "Credit Card Information," which allows a different billing address. The same is true of the designation of the account holder's name, which allows the actual user's name in the "Personal Information" field and, if appropriate, a different "Card Holder Name" in the "Credit Card Information" section. *See* PACER, https://www.pacer.gov/psco/cgi-bin/regform.pl (last visited Dec. 19, 2012). Plaintiff thus provided his mother's address, instead of his Brooklyn address, for some reason other than that to which he testified.

Moreover, even if plaintiff's testimony was ac-

curate, and he was using his mother's address as his billing address, it would mean that he knew creditors would contact him at that address. Why, then, would he write to a collection agency under a different name from a different state?

Finally, the public records of this Court show that plaintiff is a repeat filer of FDCPA lawsuits, and he is represented by the same attorneys in those lawsuits. He has filed three other such lawsuits in this district this year. It is not possible to tell from the complaints in those actions the extent to which they are similar to the instant action; it is clear that at least some of the issues are different. Nevertheless, it seems an odd coincidence that plaintiff's FDCPA rights are being violated by so many collection agencies and a law firm (one of the defendants in these cases is a law firm) simultaneously.

*8 Even if the instant lawsuit is not an attempt to improperly manipulate the law, I have serious doubts as to whether the arguments that plaintiff's attorneys have advanced have been made in good faith. In light of plaintiff's repeated failures to disclose that he was PLS of Maryland, I have difficulty seeing how it can be reasonably argued that NCO did anything wrong. I simply cannot see what else it should have done in the absence of further information from plaintiff, information as to which he had sole access.

Thus, there remain serious Rule 11 concerns that must be addressed in this case.

## CONCLUSION

Defendant's motion for summary judgment is granted and the complaint is dismissed. The Clerk is directed to enter judgment in favor of defendant. By separate order, the Court will schedule a hearing in connection with the Rule 11 issue raised above.

**SO ORDERED.**

FN1. Plaintiff asserts that it is a disputed issue of fact as to whether NCO sent the letter. There can be no genuine dispute.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

--- F.Supp.2d ----, 2012 WL 6644278 (E.D.N.Y.)

**(Cite as: 2012 WL 6644278 (E.D.N.Y.))**

NCO has produced a copy of the letter, business records showing it was mailed, and testimony confirming the regularity of the business practice. Plaintiff has offered nothing in opposition other than his denial of receipt. That is not enough to raise an issue of fact. *See Meckel v. Continental Resources Co.,* 758 F.2d 811 (2d Cir.1985) (concluding that proof of mailing creates presumption that contents were received and that proof beyond mere denial of receipt is required to survive summary judgment).

E.D.N.Y.,2012.

Saunders v. NCO Financial Systems, Inc.

--- F.Supp.2d ----, 2012 WL 6644278 (E.D.N.Y.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT
# 4

Not Reported in F.Supp.2d, 2010 WL 3732195 (N.D.Ill.)
**(Cite as: 2010 WL 3732195 (N.D.Ill.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
David POWELL, Plaintiff,
v.
PENTAGON FEDERAL CREDIT UNION, Defendant.

No. 10 CV 785.
Sept. 17, 2010.

West KeySummary**Consumer Credit 92B** ⬥34

92B Consumer Credit
   92BII Federal Regulation
      92BII(A) In General
         92Bk33 Persons, Businesses, and Transactions Subject to Regulations
         92Bk34 k. Open-End Credit, Revolving Charges, and Credit Cards. Most Cited Cases

Credit card holder pled sufficient facts to maintain a claim against creditor under the Equal Credit Opportunity Act (ECOA). Credit card holder alleged that creditor violated the ECOA by discriminating against him for closing his account based on income he received from railroad disability as well as his assertion of rights. Creditor alleged that the ECOA did not apply since the claim was regarding an existing account and not a new application. However, an "applicant" includes persons who have received an extension of credit from a creditor. Therefore, credit card holder's claim properly fell under the ECOA. Equal Credit Opportunity Act, § 701, 15 U.S.C.A. § 1691 *et seq.*.

James Eric Vander Arend, Hughes Socol Piers Resnick & Dym Ltd., Chicago, IL, for Plaintiff.

Michael S. Loeffler, Donna Paulis Touzalin, Todd H. Thomas, Loeffler Thomas Touzalin LLP, Northbrook, IL, for Defendant.

*MEMORANDUM OPINION AND ORDER*
JAMES B. ZAGEL, District Judge.
**I. BACKGROUND**
   **\*1** In 2008, Plaintiff David Powell ("Powell"or "Plaintiff") had a Visa Account with Defendant Pentagon Federal Credit Union ("Pentagon" or "Defendant"). Pursuant to the Cardholder Agreement ("Agreement") that governed the relationship, the account could be terminated under the following circumstances: (1) illegal use of the card; (2) Pentagon's adverse reevaluation of Powell's creditworthiness; (3) false or misleading statements for an advance; (4) withdrawal of consent to Pentagon's statutory lien on protected funds; or (5) default as a result of (a) failure to make timely payments, (b) insolvency or a bankruptcy filing, (c) death or incompetence, (d) judgment or garnishment against Powell's property, or (e) Pentagon's good faith determination that its or Powell's obligations to one another, or Powell's ability to repay Pentagon or otherwise perform his obligations, were unsafe or insecure.

In his second amended complaint Powell alleges that in early November 2008, Pentagon sent him a letter stating that his Visa Account was closed "based on prior delinquency with [Pentagon] and/or information reflected on a report from the following credit reporting agency: Equifax[.]" Pentagon notified Powell of his right under the Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.,* ("FCRA"), to receive a free copy of his credit file and dispute the accuracy of the credit report that was the basis for the decision to close the account.

Another letter from Pentagon followed, apparently in response to a letter from Powell. In the second letter, Pentagon explained that:

  Periodically, Pentagon Federal Credit Union reviews line of credit accounts and the member's current credit standing. If, in the judgment of the Pentagon Federal Credit Union's Credit Risk and Policy Department, such a review suggests ac-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3732195 (N.D.Ill.)
**(Cite as: 2010 WL 3732195 (N.D.Ill.))**

count activity or trends that could jeopardize the repayment of the balance owed of future use of the account, the line of credit may be closed.

In your case, our decision to close your Visa account was based on information from your credit report. We encourage you to obtain a free copy of your credit report to check its accuracy. If there are errors on the report or if there has been a recent change to this information, you are welcome to apply for a new account with evidence of the corrections or changes.

In his complaint, Powell claims that the credit report referenced in the second letter is not the Equifax report referenced in the first, but rather an "investigative report" compiled by "Pentagon or other third-parties based on interviews of, or other gathering of information from Pentagon employees and other third-parties who have information concerning Powell, his account activity," and the unidentified trends that might jeopardize repayment of the account balance. Powell complains that the termination of his account is unlawful because Powell was not delinquent on the account, and the consumer reports from the relevant time frame reveal no "significant evidence" of any account activity that could jeopardize repayment. Powell also contends that he was not given 15 days notice prior to the account closure, as he maintains is required by the agreement.

**\*2** Plaintiff alleges the following counts in his second amended complaint: (1) Breach of Contract; (2) Violations of the FCRA; (3) Violations of the Equal Credit Opportunity Act, 15 U.S.C. 1691, et seq. ("ECOA"); and (4) Violations of the Illinois Consumer Fraud Act, 815 Ill. Comp. Stat. 505 ("ICFA"). Defendant now moves to dismiss Plaintiff's complaint in its entirety.

## II. STANDARD OF REVIEW

A Motion to Dismiss under Rule 12(b)(6) requires that I analyze the legal sufficiency of the complaint, and not the factual merits of the case. *Autry v. Northwest Premium Servs., Inc.,* 144 F.3d

1037, 1039 (7th Cir.1998). I must take all facts alleged in Plaintiff's complaint as true and draw all reasonable inferences from those facts in favor of Plaintiff. *Caldwell v. City of Elwood,* 959 F.2d 670, 671 (7th Cir.1992). Plaintiff, for its part, must do more than solely recite the elements for a violation; it must plead with sufficient particularity so that its right to relief is more than a mere conjecture. *Bell Atl., Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007). Plaintiff must plead its facts so that, when accepted as true, they show the plausibility of its claim for relief. *Ashcroft v. Iqbal,* ——U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009). Plaintiff must do more than plead facts that are "consistent with Defendant's liability" because that only shows the possibility, not the plausibility, of their entitlement to relief. *Id.* (internal quotations omitted).

## III. DISCUSSION

### A. Breach of Contract

To successfully plead a breach of contract claim, Plaintiffs must allege (1) the existence of a valid contract; (2) Plaintiffs' performance of their contractual obligations; (3) breach by Defendant; and (4) resulting damages. *Akinyemi v. JP Morgan Chase Bank, N.A.,* 391 Ill.App.3d 334, 330 Ill.Dec. 311, 908 N.E.2d 163, 168 (Ill.App.2009). "Included in the formation of a valid contract are offer and acceptance, consideration, and definite and certain terms." *Van Der Molen v. Washington Mut. Finance, Inc.,* 359 Ill.App.3d 813, 296 Ill.Dec. 206, 835 N.E.2d 61, 69 (Ill.App.2005). Pentagon argues that Powell's claim should be dismissed because he fails to adequately plead a breach of the agreement by Pentagon.

In his second amended complaint, Plaintiff alleges that Pentagon closed his account in bad faith, and that the stated reason for the closing—Powell's credit report—is essentially a pretext. Instead, he asserts, Pentagon relied upon an "investigative report compiled by Pentagon or other third-parties based on interviews of, or other gathering of in-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3732195 (N.D.Ill.)
**(Cite as: 2010 WL 3732195 (N.D.Ill.))**

formation from Pentagon employees and other third-parties who have information concerning Powell, his account activity, and his trends as a consumer." Defendant points out that the determination of whether Pentagon considers Plaintiff's account "unsafe or insecure" is within Pentagon's discretion, and Pentagon has the prerogative to examine factors it deems relevant to the determination. However, the agreement does require that Pentagon conduct its examination in "good faith." According to Plaintiff, Pentagon has basically abused its power to determine how and whether Powell's account is "unsafe or insecure" and should be closed. Because Powell presents allegations that could have indeed taken place, his claim is allowed to go forward. *See Swanson v. Citibank, N.A.,* —— F.3d ——, No. 10–1122, 614 F.3d 400, 2010 WL 2977297, at *43 (7th Cir. July 30, 2010) (On a motion to dismiss, the court should examine whether the allegations in the complaint could have happened, not whether they did happen.).

**B. Violations of the FCRA**

**\*3** Section 1681 d of the FCRA requires additional notices to consumers when a person procures or causes to be prepared an investigative consumer report on that consumer. The party procuring the report must disclose to the consumer in writing "that an investigative consumer report including information as to his character, general reputation, personal characteristics, and mode of living, whichever are applicable, may be made[.]" § 1681d(a)(1). Section 1681a(e) defines an investigative consumer report as:

consumer report or portion thereof in which information on a consumer's character, general reputation, personal characteristics, or mode of living is obtained through personal interviews with neighbors, friends, or associates of the consumer reported on or with others with whom he is acquainted or who may have knowledge concerning any such items of information. However, such information shall not include specific factual information on a consumer's credit record ob-

tained directly from a creditor of the consumer or from a consumer reporting agency when such information was obtained directly from a creditor of the consumer or from the consumer.

Defendant moves to dismiss this count on the ground that Plaintiff has failed to adequately allege that Pentagon relied on an investigative consumer report.

In his second amended complaint, Plaintiff alleges that "Pentagon's application of unannounced termination criteria, its analysis of Powell based on an unidentified 'credit report' containing personal information on Powell obtained from Pentagon employees and others, and its conclusion based on its secret criteria and information, constitute an 'investigative consumer report' on Powell[.]" Basically, Powell is alleging that Pentagon based its decision to close the account on its own investigative consumer report. Powell points out that in its second letter, Pentagon makes reference to a "credit report" which, Plaintiff maintains, is not the same as the aforementioned "report from the [ ] credit reporting agency: Equifax[.]" He alleges that the "credit report" referenced in the second letter is in fact an "investigative consumer report," the initiation of which Pentagon failed to inform him.

While this interpretation seems to be a stretch of the imagination,[FN1] Plaintiff's claim fails for an independent reason. The FCRA

FN1. It is difficult to see how, after reading the two letters attached by Plaintiff, Pentagon's reference in the second letter to a credit report was anything other than a reference to the Equifax report discussed in the letter. This is especially so in light of the fact that the sentence preceding the mention in the second letter encourages Plaintiff "to obtain a free copy of your credit report to check its accuracy."

regulates "consumer report[s]" issued by "consumer reporting agenc[ies]." 15 U.S.C. §

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3732195 (N.D.Ill.)
**(Cite as: 2010 WL 3732195 (N.D.Ill.))**

1681 a(d)(1). A consumer reporting agency, so far as pertains to this case, is "any person which ... regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties." § 1681 a(f). *Mirfasihi v. Fleet Mortg. Corp.,* 551 F.3d 682, 686 (7th Cir.2008). Plaintiff has made no allegation that Pentagon is indeed a consumer reporting agency, and instead identifies Pentagon as "a federally chartered financial institution." The allegations refer only to investigations made internally, and there is no mention of any regular practice by Pentagon of evaluating consumer credit information "for the purpose of furnishing consumer reports to third parties." Even taking Plaintiff's allegations as true, any internal investigation as to Powell's information was used by Pentagon to make a determination as to its *own* extension of credit to Powell. For these reasons, Plaintiff fails to adequately allege violations of the FCRA, and this claim must be dismissed.

## C. Violations of the ECOA

**\*4** The ECOA prohibits creditors from discriminating against applicants for credit on the basis of race, color, religion, national origin, sex or marital status, or age, or because the applicant receives some or all of his or her income from a public assistance program. 41 U.S.C. § 1691(a). It also prohibits discrimination based on the applicant's good faith exercise of any right under the act. Further, the statute requires that "[e]ach applicant against whom adverse action is taken shall be entitled to a statement of reasons for such action from the creditor." § 1691(d)(2). In order to satisfy this requirement, the creditor may either provide a written statement of specific reasons for the action or give written notice of the action which discloses the applicant's right to a statement of reasons. § 1691(d)(2)-(3). Powell alleges that in closing his account, Defendant has violated the ECOA by discriminating against him based on income from railroad disability, as well as his vigorous assertion of

rights here and in other cases. Defendant moves to dismiss this claim on the grounds that (1) Powell was not an "applicant" as defined by the statute; and (2) the exhibits submitted by Powell contradict the pleadings.

Section 1691 a(b) defines an applicant as "any person who applies to a creditor directly for an extension, renewal, or continuation of credit, or applies to a creditor indirectly by use of an existing credit plan for an amount exceeding a previously established credit limit." Pentagon argues that Powell was not applicant, in that he was neither applying for new credit nor a renewal of credit. He had an existing account with Pentagon at the time of the closure. Powell maintains that such a narrow interpretation is inconsistent with the definition of an adverse action under the statute. In § 1691(d)(6), an adverse action is defined as

> a denial or *revocation* of credit, a change in the terms of an existing credit arrangement, or a refusal to grant credit in substantially the amount or on substantially the terms requested. Such term does not include a refusal to extend additional credit under an existing credit arrangement where the applicant is delinquent or otherwise in default, or where such additional credit would exceed a previously established credit limit.

(Emphasis added).

Applying the term "applicant" as narrowly as Defendant suggests would preclude a plaintiff with an existing account from bringing a claim for the discriminatory revocation of that account.[FN2] The notice requirements of the ECOA serve two purposes: to discourage discrimination and educate consumers regarding deficiencies in their credit status. *Treadway v. Gateway Chevrolet Oldsmobile Inc.,* 362 F.3d 971, 977 (7th Cir.2004).[FN3] These functions seem equally applicable and important to both the refusal of an application for an extension of credit, as well as the revocation of an existing credit account. To exclude discriminatory revocations of existing credit accounts from the list of ac-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3732195 (N.D.Ill.)
**(Cite as: 2010 WL 3732195 (N.D.Ill.))**

tionable adverse actions would undermine in part the purpose of the statute. Furthermore, the Federal Reserve Board defines an "applicant" as one "who requests or *who has received an extension of credit* from a creditor, and includes any person who is or may become contractually liable regarding an extension of credit." 12 C.F.R. § 202.2(e) (emphasis added). "The ECOA delegated to the Federal Reserve Board the power to implement regulations in furtherance of carrying out the Act's purpose[,]" and for this reason, its regulations are entitled to substantial deference. *Treadway,* 362 F.3d 971 at n. 3, *see also Nevarez v. O'Connor Chevrolet, Inc.,* 303 F.Supp.2d 927, 938 (N.D.Ill.2004).

FN2. Pentagon argues that

It is entirely possible for a person to have current credit and to be an applicant for additional credit from the same creditor, which then results in the revocation of the current credit. Moreover, the creditor need not be the same. An applicant for credit with one creditor suffers an adverse action if that application causes revocation of current credit with a different creditor. In either case, the status of being an "applicant" is consistent with a "revocation of credit," and the term "applicant" retains its ordinary meaning.

But Pentagon provides little support for its interpretation that a formal application must somehow be involved in the facts alleged in order to state a claim, and the Congressional intent in passing the statute in no way distinguishes persons whose credit has been revoked upon the filing of a formal application with a current or different creditor from those who have their current credit revoked without the associated filing of an application. Pentagon points to nothing that suggests that Congress' intent to discourage discrimination against applicants somehow ceases when the alleged

discrimination is against existing credit customers.

FN3. Congress viewed the ECOA notice requirement as

a strong and necessary adjunct to the antidiscrimination purpose of the legislation, for only if creditors know they must explain their decisions will they effectively be discouraged from discriminatory practices. Yet this requirement fulfills a broader need: rejected credit applicants will now be able to learn where and how their credit status is deficient and this information should have a pervasive and valuable educational benefit. Instead of being told only that they do not meet a particular creditor's standards, consumers particularly should benefit from knowing, for example, that the reason for the denial is their short residence in the area, or their recent change of employment, or their already overextended financial situation. In those cases where the creditor may have acted on misinformation or inadequate information, the statement of reasons gives the applicant a chance to rectify the mistake. S.Rep. No. 94–589, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Admin.News, pp. 403, 406.

**\*5** Here, Plaintiff is a person who has received an extension of credit from a creditor, Pentagon. He falls within the Federal Reserve Board's definition of an "applicant," and such a definition is consistent with Congress' intent in passing the statute. Defendant's motion to dismiss on this ground is denied.

Defendant further moves to dismiss Powell's ECOA claim based on the language of the two letters from Pentagon regarding the closure of the account. According to Pentagon, the letters, especially when read together, make it clear that Pow-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 3732195 (N.D.Ill.)
**(Cite as: 2010 WL 3732195 (N.D.Ill.))**

ell's account was closed due to information in his Equifax credit report, and he pleads no facts to support his allegation of discrimination. But Powell's complaint identifies the type of discrimination he thinks occurred (discrimination based on his railroad disability income and assertion of rights), and when it occurred (in connection with the 2008 closing of his credit account). This is sufficient to withstand Defendant's motion to dismiss, and the motion as to this claim is denied.[FN4] *Swanson v. Citibank, N.A.,* 614 F.3d 400, 2010 WL 2977297, at *4

> FN4. Although the letters do suggest that Pentagon gave appropriate notice to Powell under the ECOA, Powell maintains that the reason stated in the letter, i.e. the credit report, is inaccurate and misleading. ECOA claims on this ground are actionable. *See Fischl v. General Motors Acceptance Corp.,* 708 F.2d 143 (5th Cir.1983), and 12 C.F.R. Pt. 202, Supp I, section 202.9, para. 9(b)(2), Official Staff Interpretation ("the specific reasons disclosed under §§ 202.9(a)(2) and (b)(2) must relate to and accurately describe the factors actually considered or scored by a creditor.").

**D. Violations of the ICFA**

The ICFA prohibits "unfair or deceptive acts or practices[.]" 815 ILL. COMP. STAT.. 505/2.

To prove a private cause of action under section 10a(a) of the Act, a plaintiff must establish: (1) a deceptive act or practice by the defendant, (2) the defendant's intent that the plaintiff rely on the deception, (3) the occurrence of the deception in the course of conduct involving trade or commerce, and (4) actual damage to the plaintiff (5) proximately caused by the deception.

*Avery v. State Farm Mut. Auto. Ins. Co.,* 216 Ill.2d 100, 296 Ill.Dec. 448, 835 N.E.2d 801, 850 (Ill.2005) (citation omitted). Plaintiff alleges that Pentagon's misrepresentations and omissions with regard to its reasons for closing his account consti-tute prohibited deceptive practices under the ICFA. Defendant moves to dismiss this claim on the ground that Plaintiff fails to adequately allege any of the required elements.

Plaintiff does allege a deceptive act or practice by Defendant, namely misrepresenting the reason for termination of his credit account. Plaintiff also alleges that the misrepresentation were meant by Defendant to induce Powell to accept the closure of his account "without dispute and [to] forego hidden consumer protection claims." However, the element of proximate cause element as plead is problematic. "[T]o properly plead the element of proximate causation in a private cause of action for deceptive advertising brought under the [ICFA], a plaintiff must allege that he was, in some manner, deceived." *Oliveira v. Amoco Oil Co.,* 201 Ill.2d 134, 267 Ill.Dec. 14, 776 N.E.2d 151, 164 (Ill.2002). Powell states that he was, in fact, deceived by Pentagon's actions when, in state court, he alleged only violations of the FCRA. Powell seems to be saying that as a result of Defendant's deceptive practice, he was unaware of his potential consumer protection claims. But Powell was clearly not deceived into accepting the closure without dispute as he has brought suit against Defendant over the very issue. Furthermore, as part of his suit he has alleged a consumer protection claim pursuant to the ICFA, so he was not deceived into foregoing such claims. Because Plaintiff has failed to adequately allege proximate cause, his ICFA is dismissed.

**IV. CONCLUSION**

*6 For the foregoing reasons, Defendant's motion to dismiss is granted in part as to Plaintiff's ICFA and FCRA claims, and denied in part as to Plaintiff's breach of contract and ECOA claims.

N.D.Ill.,2010.
Powell v. Pentagon Federal Credit Union
Not Reported in F.Supp.2d, 2010 WL 3732195 (N.D.Ill.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT
# 5

Not Reported in F.Supp.2d, 2009 WL 3156555 (N.D.Ill.)
**(Cite as: 2009 WL 3156555 (N.D.Ill.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Stacie FOSTER, Plaintiff,
v.
Anthony DeLUCA; City of Chicago Heights; and
Dan Proft, Defendants.

No. 04 C 5220.
Sept. 28, 2009.

West KeySummary **Civil Rights 78** ⟜ 1395(8)

78 Civil Rights
    78III Federal Remedies in General
        78k1392 Pleading
            78k1395 Particular Causes of Action
                78k1395(8) k. Employment Practices.
Most Cited Cases

Employee's § 1983 complaint failed to allege sufficient facts to show a violation of the First Amendment right to freedom of association. Employee alleged that she was terminated by the mayor because she supported mayor's opponent. However, employee failed to plead that mayor had knowledge of employee's political orientation. Further, employee failed to provide specific factual allegations sufficient to allow a reasonable factfinder to find that her termination was plausibly a politically motivated dismissal. 42 U.S.C.A. § 1983.

Mitchell A. Kline, Law Office of Mitchell A. Kline, Chicago, IL, for Plaintiff.

Shelly Byron Kulwin, Jeffrey R. Kulwin, Kulwin, Masciopinto & Kulwin, LLP, Chicago, IL, for Defendants.

### MEMORANDUM OPINION AND ORDER

JAMES B. ZAGEL, District Judge.

**I. Background**

*\*1* On May 16, 2003, approximately one month after Defendant Mayor Anthony DeLuca ("DeLuca"), a Republican, became mayor of the City of Chicago Heights and within a few weeks of service as mayor, Plaintiff Stacie Foster ("Stacie"), a Democrat, was terminated from her job as health insurance coordinator. As a result, on August 6, 2004, Stacie filed suit against Defendants DeLuca, Dan Proft ("Proft"), DeLuca's chief of staff, and the City of Chicago Heights ("City") for violation of her right to freedom of association, Count I, and for retaliation under Title VII and 42 U.S .C. § 1983, Count II.[FN1] Stacie was the first of five plaintiffs and former City employees to allege that DeLuca and Proft terminated them unlawfully.[FN2] Defendants now move to dismiss Plaintiff's amended complaint for failure to state a claim and to strike Plaintiff's claim for punitive damages.[FN3] For the following reasons, Defendants' motion to dismiss is granted.

    FN1. Plaintiff's original complaint actually only named DeLuca and the City as Defendants. However, Plaintiff's amended complaint, filed in April 2009, added Proft as a defendant.

    FN2. Four other former City employees filed suit against DeLuca and Proft alleging that they were terminated unlawfully because they supported DeLuca's opponents in the previous election. First, on August 26, 2004, Robert Boehl filed a civil rights action against DeLuca and the City. In that case, Judge Pallmeyer granted Defendants' motion for summary judgment on February 16, 2007, on the basis that the evidence did not establish that DeLuca knew whom Boehl supported in the election and that Defendants had a legitimate, non-political reason for Boehl's termination. Second, on September 12, 2004, Doug Foster, Stacie's husband, filed a civil rights action against DeLuca and the City.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 3156555 (N.D.Ill.)
(Cite as: 2009 WL 3156555 (N.D.Ill.))

His suit is still pending based on questions of fact not present in this case. Third, on November 12, 2004, Betty Halperin filed a civil rights suit against the same Defendants. On August 10, 2006, Judge Aspen granted Defendants' motion for summary judgment, refusing to infer political bias, and instead concluding that Defendants had a legitimate, non-political reason for their decision to fire Halperin. Fourth, on April 22, 2005, Maria Zerante filed a similar complaint against the same Defendants. On April 22, 2005, Judge Gottschall granted Defendants' motion for summary judgment, stating that Zerante failed to prove that the Defendants knew of her alleged political activities and it was undisputed that the City was in financial trouble.

FN3. Plaintiff's complaint was originally dismissed for failure to state a claim. Plaintiff thereafter filed a motion for leave to file an amended complaint, which was summarily denied. Plaintiff appealed that denial; the Seventh Circuit reversed because the district court judge who denied her motion gave no reason for doing so. The case was reassigned to me in February 2009, and in March I granted Plaintiff leave to file an amended complaint.

## II. Statement of Relevant Facts

Stacie began working for the City in 1997. Since 2000, she worked as the City's health insurance coordinator for then Mayor Angelo Ciambrone. Her job included managing the City's health insurance program, organizing a filing system, and resolving problems between insurance companies and employees. Ciambrone served as Mayor from 1995 through April of 2003. When Ciambrone decided not to run for re-election, Stacie worked on the mayoral campaign of Paulnita Ress, previously Ciambrone's administrative assistant, in 2002 and 2003.

On May 16, 2003, approximately one month after DeLuca was elected mayor and within a few weeks of serving as mayor, Proft terminated Stacie's employment, which she believes DeLuca asked him to do because DeLuca, as mayor, had final policymaking authority. Stacie alleges Proft told her that her job was being eliminated because of a new federal law relating to health information of employees. Stacie believes this was not a valid basis for her firing based on information Stacie received from the U.S. Department of Health and Human Services because, according to Stacie, her job did not violate the federal privacy rule. When Stacie asked Proft if she could be transferred to another position, her request was denied. Approximately one week after Stacie's termination, Lisa Pelegrino began working for the City, assuming several of Stacie's former duties, including communicating with representatives of Long Claims Services, the City's third party administrator, regarding insurance claims.

Stacie believes that the real reason she was fired was because of her support for a Democratic mayor and mayoral candidate. She believes that DeLuca had an "evil intent to violate her constitutional right to freedom of association." Her claim is based on the following: (1) on May 7, 2003, Doug Foster ("Doug"), Stacie's husband and a previous City employee until that date, met with DeLuca and Proft; (2) Proft and DeLuca told Doug that the administration was looking to head in a new direction and wanted its people "in here" and Doug to leave his job; and (3) DeLuca and Proft each stated at the meeting that the Republican organization wanted DeLuca's administration to "chop off heads and hold them up for trophies." Furthermore, Stacie alleges that it was a policy and custom of the City to deny employees their constitutional right to freedom of association based on the firing of other employees believed to support Democratic candidates.

*2 Stacie asserts that the two named Defendants are each personally liable under 42 U.S.C. § 1983 because they either participated in the decision to terminate her or the decision occurred

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 3156555 (N.D.Ill.)

**(Cite as: 2009 WL 3156555 (N.D.Ill.))**

with their knowledge and consent. She further alleges retaliation under Title VII and § 1983 based on Defendants' decision to terminate her within few weeks of taking office because she supported their opponents in the election. As a result, Stacie alleges she lost substantial earnings, other job-related benefits, and suffered emotional distress. She seeks compensatory, pecuniary, and punitive damages.

Another Judge of this Court dismissed the complaint. Plaintiff appealed in 2008 to the Seventh Circuit, which reversed not on the merits but based solely on the district court's failure to explain its decision to deny Plaintiff's motion to file an amended complaint. Leave was granted and now this is Plaintiff's third attempt to plead a viable complaint. Defendants now move to dismiss for failure to state a claim.

### III. Standard of Review

A motion to dismiss brought pursuant to Federal Rule of Civil Procedure 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. In ruling on such a motion, I accept as true all well-pleaded factual allegations in the complaint and draw all reasonable inferences from those facts in Plaintiff's favor. *Dixon v. Page,* 291 F.3d 485, 486 (7th Cir.2002). To state a claim, the complaint need only contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed.R.Civ.P. 8(a)(2). However, "the pleading standard ... demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) (citing *Twombly,* 550 U.S. at 555). Plaintiff must do more than plead facts that are consistent with Defendants' liability because that only shows the possibility, not the plausibility, of her entitlement to relief. *Iqbal* 129 S.Ct. at 1949. Thus, a complaint will not suffice if it makes "naked assertions devoid of further factual enhancement." *Id.* (quotation and citation omitted).

### IV. Discussion

### A. Count I: Violation of the Right to Freedom of Association

Section 1983 provides that any person who, under the color of law, causes the deprivation of "any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured." *Johnson v. City of Chi.,* 711 F.Supp. 1465, 1467 (1989); 42 U.S.C. § 1983. To succeed on her § 1983 claim, Plaintiff must allege that (1) she was deprived of a constitutional right (2) as a result of an official municipal policy or custom (3) which was the proximate cause of her injury. *Monell v. New York City Dept. of Social Services,* 436 U.S. 658, 690–91, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Here, the constitutional right that was allegedly violated is Plaintiff's First Amendment freedom of association.

**\*3** "It is well established that firing ... government employees based on political motivation violates the First Amendment, with certain exceptions for policy-making positions and for employees having a confidential relationship with a superior." *Hall v. Babb,* 389 F.3d 758, 762 (7th Cir.2004) (citing *Rutan v. Republican Party of Ill.,* 497 U.S. 62, 65, 110 S.Ct. 2729, 111 L.Ed.2d 52 (1990); *Elrod v. Burns,* 427 U.S. 347, 367, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976)). To successfully state a First Amendment claim, Plaintiff must specifically plead that her political orientation was "a substantial or motivating factor in the employment decision." *Id.* Furthermore, to survive a motion made pursuant to 12(b)(6), Plaintiff must plead under § 1983 that her constitutional rights were violated by an express policy, a widespread practice, or a person with final policymaking authority. *McGreal v. Ostrov,* 368 F.3d 657, 684 (7th Cir.2004). Under the pleading standard, as identified in *Twombly* and *Iqbal,* Plaintiff has failed to adequately plead that she was terminated based on her political orientation, let alone that her termination was, as she alleges, a widespread practice of DeLuca and the City of Chicago Heights.

"A claim has facial plausibility when the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 3156555 (N.D.Ill.)

**(Cite as: 2009 WL 3156555 (N.D.Ill.))**

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Twombly,* 550 U.S. at 556 (2007). Here, Plaintiff's entire pleading can be boiled down to three allegations: (1) soon after taking office, Defendants fired Plaintiff and seven other people, (2) over a week before Plaintiff was fired, Defendants made a tasteless statement to another individual (Plaintiff's husband) while he was being terminated, (3) and at least several of Plaintiff's duties were assumed by someone else after she was fired, thus belying Defendants' asserted reason for terminating her.

Plaintiff cites to the termination of seven other employees shortly after DeLuca took office as illustrative of the "widespread practice of DeLuca and the City of firing people believed to have supported his Democratic opponent." However, in three other cases, Judges Aspen, Pallmeyer, and Gottschall each entered summary judgment in Defendants' favor, each deciding that no reasonable finder of fact could conclude that Defendants had knowledge of the political orientation of three of those employees. In a fourth case, another employee awaits trial on factual matters not present in this case. *See, supra,* note 2. Plaintiff has, at most, pled facts sufficient to sustain an allegation that DeLuca has generated a number of disgruntled ex-employees.

Moreover, the complete absence of specific allegations regarding Defendants' knowledge of Plaintiff's political leanings does not help Plaintiff's pleading rise above the level of "naked assertions" admonished in *Iqbal. Iqbal,* 129 S.Ct. at 1949 (2009) (quoting *Twombly* ). Plaintiff further claims that the reason given for her termination was untrue, and that someone else is currently employed by the City in the same capacity in which she used to be employed. However, she does not provide specific factual allegations sufficient to allow me to make a reasonable inference that her termination was plausibly a politically motivated dismissal.

**\*4** Although Plaintiff's pleading makes liberal use of the *Twombly* "reasonable inference" termino-

logy, her citation of Defendants' remarks to a third party—which bear no relation to her termination—and her unsubstantiated allusion to the "widespread practice of DeLuca and the City of firing people believed to have supported his Democratic opponent" are unconvincing, especially in light of the relatively rich discovery and case history afforded to Plaintiff. *See, supra,* note 2.

**B. Count II: Title VII and § 1983 Retaliation**

In Count II, Plaintiff alleges: "Defendants violated Title VII and § 1983 when they retaliated against Plaintiff by terminating her in May 2003, within a few weeks of taking office, after she had supported their opponents in the primary and general City elections of February and April 2003, respectively." While unclear, it appears that this count attempts to state a claim for retaliation under both Title VII and § 1983. With regard to the claim made under Title VII, it is undisputed that Plaintiff has not alleged an underlying Title VII violation. Further, Plaintiff failed to plead that she engaged in any activity whatsoever that was protected by Title VII, let alone that she was terminated as a result of engaging in such activity. Even if I were to assume Plaintiff was terminated for her political leanings, this does not come within the purview of Title VII.

If instead, Plaintiff pursues a claim of retaliation under § 1983 because Defendants terminated her for her support of DeLuca's opponent, this merely restates the allegations contained in Count I and is dismissed for the same reasons.

**C. Conclusion**

For the foregoing reasons, Defendants' motion to dismiss is granted.[FN4]

> FN4. As I have granted the motion to dismiss, I need not address Defendants' objection to Plaintiff's claim for punitive damages.

N.D.Ill.,2009.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2009 WL 3156555 (N.D.Ill.)
**(Cite as: 2009 WL 3156555 (N.D.Ill.))**

Foster v. DeLuca
Not Reported in F.Supp.2d, 2009 WL 3156555
(N.D.Ill.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT
# 6

Slip Copy, 2012 WL 5373448 (D.Puerto Rico)
**(Cite as: 2012 WL 5373448 (D.Puerto Rico))**

Only the Westlaw citation is currently available.

United States District Court,
D. Puerto Rico.
Maximiliano PEREZ, Plaintiff,
v.
PORTFOLIO RECOVERY ASSOCIATES, LLC, et
al., Defendants.

Civil No. 12–1603 (JAG).
Oct. 30, 2012.

Maximiliano Perez, Guaynabo, PR, pro se.

Francisco J. Mercado–Olivero, Colon, Colon &
Martinez, San Juan, PR, for Defendant.

### OPINION & ORDER

JAY A. GARCIA–GREGORY, District Judge.

*1 Pending before the Court is Portfolio Re-
covery Associates, LLC's ("Defendant") Motion to
Dismiss under FED.R.CIV.P. 12(b)(6). (Docket No.
8). For the reasons that follow, the Court GRANTS
this motion and dismisses this case with prejudice.

### BACKGROUND

Plaintiff Maximiliano Perez ("Plaintiff") filed
this suit, *pro se,* alleging that Defendant had will-
fully violated the Fair Credit Reporting Act
("FCRA") in making sixteen unauthorized inquiries
into Plaintiff's credit report. (Docket No. 1, ¶ 29).
Plaintiff contends that these inquiries harmed his
ability to obtain credit and, among other things, res-
ulted in higher insurance premiums.[FN1] (*See*
Docket No. 1, ¶ 33). Defendant does not deny that
it made the inquiries. However, Defendant argues
that the FCRA requires Plaintiff to allege that
"defendant used or obtained the plaintiff's credit re-
port for an impermissible purpose" and "that the vi-
olation was willful or negligent." (Docket No. 8, p.
6; citing 15 U.S.C. § 1681(b)f and *Stonehart v.
Rosenthal,* 2001 WL 910771 (S.D.N.Y. Aug. 13,
2001)).[FN2] Defendant's position is that the com-

plaint does not charge them with either willful or
negligent conduct in making those inquiries. Thus,
it fails to state a claim and must be dismissed.

FN1. Plaintiff appears to paint these in-
quiries as the sole reason his loan applica-
tion was denied. (*See* Docket No. 1, ¶ 32).
However, Scotiabank's letter reveals that
"excessive inquiries" were but one of four
reasons that justified rejecting his applica-
tion. (*See* Docket No. 1–1). Scotiabank
also found Plaintiff's regular and revolving
account balances to be "excessive," as well
as problems with the length of his credit
history. (*Id.*). The Court notes that this at-
tachment forms part of the pleadings and
may be considered at the motion to dismiss
stage. However, the same is in Spanish and
circuit precedent requires it be translated to
English. *See Gonzalez–de–Blasini v. Fam-
ily Dept.,* 377 F.3d 81, 89 (1st Cir.2004)
(holding that the "district court should not
have considered any documents before it
that were in the Spanish language"). **Thus,
and in the interest of efficiency, the
Court conditions this Opinion and Or-
der on Defendant's submission of a cer-
tified translation of the aforementioned
exhibit within 30 days of the entry of
this Order.** *See* Local Rule 5(g).

FN2. The Court notes that there is little ca-
selaw in our Circuit dealing with the
FCRA, especially regarding the provisions
under which Plaintiff brings this case.
However, the Court finds that the test out-
lined by *Stonehart* is consistent with both
the statute and other courts which have ad-
dressed claims under § 1681(b). *See e.g.
Dobson v. Holloway,* 828 F.Supp. 975, 977
(M.D.Ga.1993) ("The fact that a consumer
report is furnished for an impermissible
purpose ... does not result in automatic li-
ability. Liability is imposed only when the

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

consumer reporting agency either willfully or negligently fails to maintain reasonable procedures to avoid violations of, i.e., § 1681 b."); *see also Phillips v. Grendahl,* 312 F.3d 357, 364 (8th Cir.2002) *abrogated on other grounds by Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47 (2007). Accordingly, the Court finds it proper to employ this test here.

## STANDARD OF LAW

Under Rule 12(b)(6), a defendant may move to dismiss an action for failure to state a claim upon which relief can be granted. To overcome a Rule 12(b)(6) motion, the complaint must plead sufficient facts "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007); *see also Ashcroft v. Iqbal,* 556 U.S. 662 (2009).

In *Ocasio–Hernández v. Fortuño Burset,* 640 F.3d 1 (1st Cir.2011), the First Circuit distilled from *Twombly* and *Iqbal* a two-pronged test designed to measure the sufficiency of a complaint. First, the reviewing court must identify and disregard "statements in the complaint that merely offer legal conclusions couched as fact, or threadbare recitals of the elements of a cause of action." *Ocasio–Hernández,* 640 F.3d at 12 (internal punctuation omitted). In this analysis, the remaining nonconclusory factual allegations must be taken as true, even if they are "seemingly incredible," or that "actual proof of those facts is improbable." *Id.* Finally, the court assesses whether the facts taken as a whole "state a plausible, not merely a conceivable, case for relief." *Id.*

## ANALYSIS

In 1970, Congress enacted the FCRA "to ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy." *Safeco Ins. Co. of Am. v. Burr,* 551 U.S. 47, 52 (2007). The FCRA aims to ensure "that consumer reporting agencies adopt reasonable procedures for meeting the needs of commerce for consumer credit, personnel, insurance, and other in-

formation in a manner which is fair and equitable to the consumer, with regard to the confidentiality, accuracy, relevancy, and proper utilization of such information." 15 U.S.C. § 1681(b). The FCRA enforces this goal by imposing civil liability upon a person or entity that willfully or negligently obtains a credit report for a purpose that is not authorized by the statute. 15 U.S.C. §§ 1681b(f), 1681n(a). A plaintiff may recover actual damages for negligent violations, 15 U.S.C. § 1681 o(a)(1), and actual or statutory and punitive damages for willful ones, *id.* § 1681n(a)(1)-(2); *Safeco,* 551 U.S. at 53.

**\*2** Plaintiff contends that on sixteen different occasions, Defendant impermissibly used or obtained Plaintiff's credit report. But the mere fact that Defendant accessed Plaintiff's report without his consent is not sufficient to engage the liability provisions of the FCRA. *See* 15 U.S.C. § 1681(a); *see e.g. Stergiopoulos v. First Midwest Bancorp, Inc.,* 427 F.3d 1043, 1046 (7th Cir.2005) (observing that § 1681b "does not require that consumers expressly approve each request for a report"). It is the *purpose* behind the inquiry that is determinative. For example, an entity may procure a person's credit report without permission if it:

1. "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of, the consumer;" *Id.* at § 1681a(3)(A).

2. "intends to use the information, as a potential investor or servicer, or current insurer, in connection with a valuation of, or an assessment of the credit or prepayment risks associated with, an existing credit obligation;" *Id.* at § 1681b (a)(3)(A).

3. or if it "otherwise has a legitimate business need for the information." *Id.* at § 1681b(a)(3)(F) , such as when a review of a consumer account is necessary "to determine whether the consumer continues to meet the terms of the account." *Id.* at § 1681b(a)(3)(F)(ii).

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 5373448 (D.Puerto Rico)
**(Cite as: 2012 WL 5373448 (D.Puerto Rico))**

To survive Defendant's Motion to Dismiss, the complaint must aver sufficient facts to establish to a plausible degree that Defendant obtained the credit reports for an impermissible purpose, and that their conduct was either willful or negligent. *See* Footnote 2, *supra*; *see also Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) *and Ashcroft v. Iqbal*, 556 U.S. 662 (2009). The Court finds the complaint fails to meet either requirement.

*Were the inquiries made for a permissible purpose?*

Beyond stating that Defendant made sixteen inquiries into Plaintiff's credit report, the complaint offers no factual basis to infer what purpose—permissible or impermissible—Defendant had in making those inquiries. The complaint starts by stating that Defendant has been "obtaining and furnishing information from the Plaintiff's Transunion consumer credit report with no permissible purpose in violation of the FRCA." (Docket No. 1, ¶ 2). But this is nothing more than a "threadbare recital of the elements of a cause of action," and thus may safely be discarded in this analysis. *Ocasio–Hernández*, 640 F.3d at 12 (internal punctuation omitted).

The complaint alleges that Plaintiff has no accounts or business with the Defendant "that could grant the Defendant any right to collect, or to have permissible purpose to obtain Plaintiff's consumer report, or make any inquiries ..." (Docket No. 1, ¶ 39). But no part of the FCRA prevents third-parties from searching a person's credit report, even ones with no previous relationship to the person, provided that the inquiry is done for permissible purposes. The fact that Plaintiff had credit problems, as evidenced by the loan rejection letter, (*see* Footnote 1, *supra* ), militates against finding that the credit inquiries were unwarranted. *See e.g.* 15 U.S.C. § 1681b(a)(3)(A) (providing that credit inquiry is permissible for "review or collection of an account of[ ] the consumer"); *see generally Huertas v. Galaxy Asset Management*, 641 F.3d 28, 34 n. 7 (3rd Cir.2011); *see also* 15 U.S.C. § 1681b (a)(3)(F)(ii). Thus, this argument is also unavailing.

**\*3** The complaint also states that the consumer report "places outside the 'permissible purpose' all inquiries" made by Defendant. (Docket No. 1, ¶ 27, copied *verbatim* ). Plaintiff points to what appears to be a printed page of a section of Plaintiff's website account with Transunion, attached to the complaint as "Evidence A1." (*See* Docket No. 1–1). That document shows the "account review inquiries" made on Plaintiff's report.[FN3] These are listed by the company that made the inquiry, and include that company's address and the date on which the requests were made. Some of the inquiries listed include a section titled "Permissible Purpose." For example, the printout shows that two inquiries were made either by Plaintiff or on his behalf. (*See e.g. Id.* (for "credit monitoring" and due to "consumer request")). Another request was made for the purpose of "collection." (*Id.*). However, the requests made by Defendants are more numerous than those made by any other entity on the report, and do not have the "permissible purpose" qualifier. Taken in isolation and in the light most favorable to Plaintiff, this *might* indicate that Defendant did not have a statute-sanctioned purpose in obtaining his credit report. However, it is a stretch (and an implausible one at that) to state that the mere omission of the "permissible purpose" qualifier for Defendant's inquiries *automatically* means that those inquiries were impermissible. *See Heath v. Credit Bureau of Sheridan, Inc.*, 618 F.2d 693, 696 (10th Cir.1980) (noting that "if a credit bureau supplies information on a consumer that bears on personal financial status, but does not know the purpose for which the information is to be used, it may be reasonable to assume the agency expected the information to be used for a proper purpose"). This is so because Transunion bears the same obligation as Defendant, and as any other person intending to inquire upon Plaintiff's credit history, of ensuring that those inquiries are made for permissible purposes.

> FN3. The Court is not exactly sure what this document represents. For instance, the page explicitly states that the "inquiries are not displayed to anyone but you *and will*

Slip Copy, 2012 WL 5373448 (D.Puerto Rico)
**(Cite as: 2012 WL 5373448 (D.Puerto Rico))**

*not affect any creditor's decision or any credit score ...,"* (Docket No. 1–1, p. 1) (emphasis added), which belies Plaintiff's contention that his credit eligibility was affected by Defendant's inquiries. This also flies in the face of the statute's definition of what a "consumer report" is. *Cf.* 15 U.S.C. § 1681a(d)(1)(term "consumer report" means any [ ... ] communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness [ ... ] which is used [ ... ] *for the purpose of establishing the consumer's eligibility for credit ...*") (emphasis added). Second, it is not clear whether this page represents all, or only a portion of, the inquiries made on Plaintiff's credit report.

In any event, *Iqbal* requires that the claims asserted be plausible, not merely possible. *Ashcroft v. Iqbal,* 129 S.Ct. at 1951 (internal punctuation omitted). To nudge a complaint across the line from the possible to the plausible, plaintiffs must do more than deliver "naked assertions devoid of further factual enhancement." *Id.* at 1949 (*citing* Twombly, 550 U.S. at 557); *see also Ocasio–Hernández v. Fortuño Burset,* 640 F.3d at 14–15 (to survive a Rule 12(b)(6) motion to dismiss, plaintiffs must bolster their allegations with "discrete factual events"). Here, while there may be sufficient ground to find that Defendant *possibly* obtained Plaintiff's credit report without any permissible purpose, the complaint—taken as a whole—stops short of showing plausibility. Further, the Court is not required to "conjure up unpled allegations" to support Plaintiff's deficient complaint. *Gooley v. Mobil Oil Corp.,* 851 F.2d 513, 514 (1st Cir.1988).

**\*4** Other courts have faced this type of complaint before, based on similar allegations, and have also found them lacking. *See e.g., Hinton v. Trans Union, LLC,* 654 F.Supp.2d 440 (E.D.Va.2009), *aff'd* 382 Fed. Appx. 256, 2010 WL 2294589 (dismissing FCRA claims that rested on the allegation that the plaintiff never gave his consent to several inquiries in the credit report).

*Were Defendant's actions willful or negligent?*
The complaint fares worse on this prong of the test. To start with, this factor feeds off of the previous one, for the Court cannot find negligence or willfulness where Defendant's conduct was not contrary to the FCRA. But even assuming *arguendo* that Defendant impermissibly obtained Plaintiff's credit report, the complaint fails to follow through and plausibly plead that Defendant's conduct was either willful or negligent.

At every turn, the complaint claims that Defendant's actions were negligent or willful, but gives no factual basis for these allegations. *(See e.g.,* Docket No. 1, ¶ 29, 30, 35–37, etc.). For instance, the complaint contends Defendant willfully violated the FCRA "by obtaining Plaintiff's consumer report without permissible purpose ..." (Docket No. 1, ¶ 29). But that threadbare statement is not enough. To survive Defendant's motion to dismiss, Plaintiff must aver sufficient facts to plausibly establish that Defendant, either knowingly or with reckless disregard, ignored its obligations under the FCRA. *See Safeco Ins. Co. v. Burr,* 551 U.S. 47, 56–60 (2007)(holding that willfulness as used in § 1681n of the FCRA means knowledge or recklessness). There is no such allegation present in Plaintiff's complaint. Neither is there enough to glean negligence from the pleadings. Simply put, the reasons for which Defendant made the inquiries are unknown and, more importantly, remain unpled.

In *Farkash v. RJM Acquisitions Funding, Inc.,* Slip Copy, 2012 WL 2619710 (S.D.N.Y.2012), the plaintiff alleged he "contacted Defendants to notify them of their violations in an attempt" to amicably settle his dispute. *Id.* at *2. Like in *Farkash,* the Plaintiff here sent that communication *after* the alleged violations had occurred. (*Cf. Farkash,* 2012 WL 2619710 at 2 *with* Docket No. 1, ¶ 27). Accordingly, Plaintiff cannot claim that his communication put Defendant on notice that their actions were illegal. The opposite seems to be the case, as there appear no inquiries made by Defendant after

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 5373448 (D.Puerto Rico)
**(Cite as: 2012 WL 5373448 (D.Puerto Rico))**

the date in which Plaintiff allegedly notified Defendant of his impending lawsuit.

### CONCLUSION

For the reasons set forth above, the Court hereby **GRANTS** Defendant's Motion to Dismiss. Judgment shall be entered accordingly.

**IT IS SO ORDERED.**

D.Puerto Rico,2012.
Perez v. Portfolio Recovery Associates, LLC
Slip Copy, 2012 WL 5373448 (D.Puerto Rico)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT
# 7

Slip Copy, 2012 WL 2359954 (W.D.Pa.)
**(Cite as: 2012 WL 2359954 (W.D.Pa.))**

**H**

Only the Westlaw citation is currently available.

United States District Court,
W.D. Pennsylvania.
John J. TAURO, Plaintiff,
v.
ASSET ACCEPTANCE, Northland Group, Mercantile Adjustment Bureau, and Asset Management Pro, Defendants.

Civil Action No. 2:12–cv–00418.
June 20, 2012.

John J. Tauro, Pittsburgh, PA, pro se.

### MEMORANDUM OPINION

MARK R. HORNAK, District Judge.

**\*1** Plaintiff John J. Tauro (the "Plaintiff"), appearing *pro se,* brings the instant civil action against Asset Acceptance, Northland Group, Mercantile Adjustment Bureau, and Asset Management Pro (collectively, the "Defendants"), for alleged violations under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g; the Fair Credit Reporting Act, 15 U.S.C. 1681(b); and the Pennsylvania Fair Credit Extension Umformity Act, 73 P.S. § 2270.4.
FN1 Currently pending before the Court is the Plaintiff's Motion for Leave to Proceed *in forma pauperis* ("IFP") pursuant to 28 U.S.C. § 1915(a). (ECF No. 1). For the following reasons, the Court will grant the motion, and, pursuant to 28 U.S.C.1915(e)(2)(B)(ii), dismiss the action without prejudice—and with leave to amend—for failure to state a claim upon which relief may be granted.

> FN1. In the Complaint, the Plaintiff asserts a claim under 73 P.S. § 2270.4, titled "Unfair or deceptive acts or practices," and labels it as the Pennsylvania Unfair Trade Practices and Consumer Protection Law. However, this section of the Trade and Commerce article is properly referred to as the Fair Credit Extension Uniformity Act.

*See* 73 P.S. § 2270.1 et seq. That said, if a debt collector or creditor engages in an unfair or deceptive debt collection act or practice in violation of the Fair Credit Extension Uniformity Act, it also constitutes a violation of the Unfair Trade Practices and Consumer Protection Law. *See* 73 P.S. § 2270.5; compare *Richburg v. Palisades Collection LLC,* 247 F.R.D. 457, 466 (E.D.Pa.2008) with *Van Veen v. AT & T Corp.,* No. 10–1635, 2011 WL 4001004, at *6 (E.D.Pa.2009).

### I.

Our Court of Appeals has instructed the district courts to conduct a two-step analysis when considering applications for IFP status. *See Roman v. Jeffes,* 904 F.2d 192, 194, n. 1 (3d Cir.1990). The court is to consider the moving party's financial status and determine, based upon economic criteria alone, whether IFP status should be granted, and then consider whether the complaint is frivolous, malicious, fails to state a claim on which relief may be granted, or seeks relief from a defendant immune from suit. *Id.* (establishing that the court assesses complaint for frivolousness under 28 U.S.C.1915(d)); Prison Litigation Reform Act, Pub.L. No. 104–134, § 804(a), (c)-(e), 110 Stat. 1321, 1321–74 (1996) (replacing 28 U.S.C. § 1915(d) with 28 U.S.C. § 1915(e), adding bases of review). It is within the sound discretion of the district courts whether to grant or deny IFP status. *See U.S. v. Holiday,* 436 F.2d 1079, 1079–80 (3d Cir.1971). The Plaintiff's motion states that he is not incarcerated. However, the Third Circuit has held that the provisions of 28 U.S.C. § 1915 apply to all IFP complaints, not simply those filed by prisoners. *See Max's Seafood Cafe v. Quinteros,* 176 F.3d 669, 677 (3d Cir.1999); *Grayson v. Mayview State Hosp.,* 293 F.3d 103, 114, n. 19 (3d Cir.2002).

Tauro's IFP motion also states that he is currently unemployed. Nevertheless, the Plaintiff col-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 2359954 (W.D.Pa.)
**(Cite as: 2012 WL 2359954 (W.D.Pa.))**

lects at most $1647.00 per month ("$562.00 x2" + $523.00) in unemployment and social security benefits. At this time, Plaintiff purports to have $300.00 in either a checking account or savings account, owns a 1999 Ford Escort, and has approximately $1345.00 in regular monthly expenses (Rent: $605.00; Utilities: $250.00; Insurance: $50.00; Student Loan: $240.00; Miscellaneous (food, transportation, etc.): $200.00). The Plaintiff's regular monthly expenses nearly exceed his reported household income, and, therefore, the Court is satisfied that the Plaintiff has made a sufficient showing of indigence. Thus, based on economic criteria alone, the motion for IFP status is granted.

## II.

When a party wishes to proceed in an IFP capacity, the court "shall dismiss the case at any time if it determines that ... the action or appeal ... fails to state a claim upon which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). This rule parrots the standard the Court applies in ruling on a motion to dismiss for failure to state a claim under Fed.R.Civ.P. 12(b)(6).

**\*2** In considering a dismissal under Rule 12(b)(6), federal courts require notice pleading, as opposed to the heightened standard of fact pleading. *See Phillips v. Cnty. Of Allegheny,* 515 F.3d 224, 233 (3d Cir.2008). Rule 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the ... claim is and the grounds on which it rests." *Bell Atlantic Corp. v. Twombly,* 550 U.S. 554, 555 (2007) (quoting *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)) (internal quotations omitted).

Building upon the landmark United States Supreme Court decisions of *Twombly* and *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009), the United States Court of Appeals for the Third Circuit recently explained that a district court must take three steps to determine the sufficiency of a complaint:

First, the court must "take[e] note of the elements a plaintiff must plead to state a claim." Second, the court should identify allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Third, "whe[n] there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." This means that our inquiry is normally broken into three parts: (1) identifying the elements of the claim, (2) reviewing the complaint to strike conclusory allegations, and then (3) looking at the well-pleaded components of the complaint and evaluating whether all of the elements identified in part one of the inquiry are sufficiently alleged.

*Malleus v. George,* 641 F.3d 560, 563 (3d Cir.2011) (quoting *Iqbal,* 129 S.Ct. at 1947, 1950) (internal citations omitted).

The third step of the sequential evaluation requires this Court to consider the specific nature of the claim(s) presented and to determine whether the facts pled to substantiate the claims are sufficient to show a "plausible claim for relief." *See Iqbal,* 129 S.Ct. at 1950. While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations. *Id.; see also Fowler v. UPMC Shadyside,* 578 F.3d 203, 210–11 (3d Cir.2009).

A court may not dismiss a complaint merely because it appears unlikely or improbable that a plaintiff can prove the facts alleged or will ultimately prevail on the merits. *Twombly,* 550 U.S. at 556. Instead, the court must ask whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements. *Id.* Generally speaking, a complaint that provides adequate facts to establish "how, when, and where" will survive dismissal. *Fowler,* 578 F.3d at 212; *see also Guirguis v. Movers Specialty Services, Inc.,* 346 Fed. App'x 774, 776 (3d Cir.2009). In short, the court should not dismiss a case if a party alleges facts which could, if established at trial, entitle him

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 2359954 (W.D.Pa.)
**(Cite as: 2012 WL 2359954 (W.D.Pa.))**

to relief. *Fowler,* 578 F.3d at 213. In determining the sufficiency of a *pro se* complaint, the Court must be mindful to construe it liberally in favor of the plaintiff. *See Haines v. Kerner,* 404 U.S. 519, 520–21, 92 S.Ct. 594, 30 L.Ed.2d 652 (1972); *U.S. v. Day,* 969 F.2d 39, 42 (3d Cir.1997).

### III.

**\*3** In the Complaint (ECF No. 1–1), the Plaintiff alleges violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692g ("FDCPA"); the Fair Credit Reporting Act, 15 U.S.C. 1681(b) ("FCRA"); and the Pennsylvania Fair Credit Extension Uniformity Act, 73 P.S. § 2270.4 ("FCEUA"). Specifically, the Plaintiff claims that the Defendants: (1) initiated credit checks (i.e., credit pulls) without a permissible purpose, which lowered the Plaintiff's credit rating; and (2) engaged in the collection of a non-existent debt. According to the Plaintiff, this alleged conduct took place sometime in 2010 and 2011. (ECF No. 1–1, Compl. ¶ 1.)

As to the Plaintiff's FDCPA claim, the Court concludes that the Plaintiff fails to state a claim upon which relief may be granted. The Plaintiff brings his FDCPA claim pursuant to 15 U.S.C. § 1692g. Under that statute, there are two avenues by which a consumer can bring suit against a debt collector for failure to validate the proposed debt. First, § 1692g(a) requires a debt collector to provide, either in the initial communication with a consumer (in connection with the collection of any debt) or a validation notice within five (5) days of such communication, the following information to put the consumer on notice of the debt being collected: (1) the amount of the debt; (2) the name of the creditor; (3) a statement that the debtor may disrupt the debt's validity within thirty (30) days of receipt of the communication; (4) a statement that if the debtor does dispute the debt within thirty (30) days, the debt collector shall send the debtor a verification of the debt or a copy of a judgment entered against him; and (5) a statement that if requested within the thirty (30) day period, the debt collector will send to the debtor the name and address of the

original creditor if different from the current creditor. *See* 15 U.S.C. § 1692g(a)(1)-(5), *Oppong v. First Union Mortg. Corp.,* 566 F.Supp.2d 395, 401 (E.D.Pa. July 24, 2008). The Plaintiff does not allege that, nor does he aver facts to suggest that, the Defendants provided (or failed to provide) either an initial communication or validation notice containing the information required by law. In order to state a valid FDCPA claim, the Plaintiff must do so. Instead, the Plaintiff simply states in nearly every paragraph of the Complaint that each of the Defendants was "engaged in the collection of a non-existent debt in violation of the FDCPA." As the applicable legal standard requires, even if taken as true, such a conclusory assertion is inadequate to show a "plausible claim for relief" under *Iqbal.*

The other avenue that a plaintiff may take in an action pursuant to 15 U.S.C. § 1692g is subsection (b), which requires the debt collector to cease collection of the debt until the debt collector obtains verification of the debt or a copy of the judgment (or the name and address of the original creditor) and mails such information to the consumer. *See* 15 U.S.C. § 1692g(b). In order to bring a cause of action under this provision of the statute, a plaintiff must set forth facts to establish that: (1) he sent a writing to the debt collector disputing the debt, and thus triggering the verification requirements; (2) the debt collector's response did not satisfy the verification requirements; and (3) that any post-dispute activity by the debt collector amounted to prohibited debt collection activity. *See* 15 U.S.C. § 1692g(b), *Peterson v. Portfolio Recovery Associates, LLC,* 430 Fed. App'x 112, 116 n. 3 (3d Cir.2011). Again, the Plaintiff, in his five paragraph complaint, is unable to satisfy the *Twombly/Iqbal* pleading standard to support his FDCPA claim. Here, he makes no mention of any writing from him to any of the Defendants that disputes a debt or any other communication from a defendant that qualifies as prohibited debt collection activity under 15 U.S.C. § 1692g. Therefore, the FDCPA claim, to the extent the Plaintiff asserts such a claim, is dismissed without prejudice. The Plaintiff has leave to

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 2359954 (W.D.Pa.)
**(Cite as: 2012 WL 2359954 (W.D.Pa.))**

amend the Complaint with sufficient facts to support such a claim within thirty (30) days of the date of the Order that follows.

**\*4** Under the FCEUA, the Plaintiff likewise fails to state a claim upon which relief can be granted. The Pennsylvania FCEUA "establishes what shall be considered ... unfair or deceptive acts or practices with regard to the collection of debts." 73 P.S. § 2270.2. The statute applies both to debt collectors and creditors. *See* 73 P.S. § 2270.4(a) and (b). If a debt collector violates any provision of the FDCPA, such a violation constitutes an unfair or deceptive debt collection act or practice under the FCEUA. 73 P.S. § 2270.4(a). If a creditor violates any of the subsections under 73 P.S. 2270.4(b), it constitutes an unfair or deceptive debt collection act or practice. Those subsections generally cover three types of acts: (1) a communication; (2) false representations, deceptive acts, or abusive conduct, including the use of threats or profane language; and (3) the collection, solicitation, or charging of money related to the collection—or an attempt to collect—a debt. The Court will address each of these in turn.

The Plaintiff does not identify a single communication made by the Defendants, either to him or any other person, regarding the collection of the alleged non-existent debt. *See Garczynski v. Countrywide Home Loans, Inc.,* 656 F.Supp.2d 505, 575 (E.D.Pa.2009). To the extent the act of obtaining a credit report from a credit reporting agency constitutes a communication in connection with the collection of a debt under 73 P.S. § 2270.4(b)(3), the Plaintiff provides no factual support for the claim that the credit pulls were in connection with the collection of a debt. The Plaintiff further fails to provide any facts detailing the circumstances surrounding each credit report obtained by the Defendants. Finally, with respect to the remainder of the prohibited acts under the FCEUA, Plaintiff does not allege that the Defendants made false representations, engaged in abusive conduct, used threats or profane language, or attempted to collect, solicit, or

charge any amount of money in collecting (or attempting to collect) a debt. In order to state such a claim, the Plaintiff must file an Amended Complaint setting forth such necessary factual support.

The Plaintiff likewise fails to meet the pleading standard necessary to state a claim under the FCRA. In the Complaint, the Plaintiff alleges that each of the Defendants initiated credit pulls (i.e., requested and obtained the Plaintiff's consumer credit report) without permissible purpose in violation of 15 U.S.C. § 1681b. (ECF No. 1–1, Compl. ¶¶ 1–5). The FCRA imposes civil liability upon a person who willfully obtains a consumer report for a purpose that is not authorized by the FCRA. *See Huertes v. Galaxy Asset Management,* 641 F.3d 28, 34 (3d Cir.2011); *Cole v. U.S. Capital,* 389 F.3d 719, 731 (7th Cir.2004); *Cappetta v. GC Servs. Ltd. P'ship,* 654 F.Supp.2d 453, 457 (E.D.Va.2009); and 15 U.S.C. § 1681b(f), § 1681n(a). Under 15 U.S.C. § 1681(a), a credit reporting agency may only furnish a consumer report: (1) in response to a court order or grand jury subpoena; (2) in accordance with written instructions from the consumer to whom it relates; or (3) to a person which the credit reporting agency has reason to believe—

**\*5** (a) intends to use the information in connection with a credit transaction involving the consumer and the extension of credit to that consumer;

(b) intends to use the information for employment purposes;

(c) intends to use the information in connection with the underwriting of insurance involving the consumer;

(d) intends to use the information related to a determination the consumer's eligibility, based on financial responsibility or status, for a license or other benefit granted by a governmental unit;

(e) intends to use the information (as a potential investor, servicer, or current issuer) related with a

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 2359954 (W.D.Pa.)
**(Cite as: 2012 WL 2359954 (W.D.Pa.))**

valuation of an existing credit obligation; or

(f) otherwise has a legitimate business need for the information—

(i) in connection with a business transaction initiated by the consumer; or

(ii) to review an account to determine whether the consumer continues to meet the terms of the account.

15 U.S.C. § 1681b(a)(1)-(3). Other permissible purposes include: (1) executive departments and agencies requesting information related to the issuance of government-sponsored travel charge cards; (2) a request by the head of a state or local child support enforcement agency; (3) an agency making a request in connection with administering a plan under 42 U.S.C. § 654 to set or modify a child support award; and (4) a request by the Federal Deposit Insurance Corporation or the National Credit Union Administration in carrying out their duties related to the resolution or liquidation of a failed or failing insured depository institution or credit union. *See* 15 U.S.C. § 1681b(a)(3)(G)-(a)(6). In order to survive dismissal, the Plaintiff must allege, with sufficient factual support, that the Defendants willfully obtained his credit report without having a purpose to review it. *Huertas v. U.S. Dept. of Educ.,* 1:08–cv–03959, 2009 WL 3165442, at *9 (D.N.J. Sept.28, 2009) (citing *Cappetta,* 654 F.Supp.2d at 461). In other words, the [c]omplaint must allege facts sufficient to demonstrate that [the Defendants] should have known either that it did not intend to use the credit report in connection with a credit transaction involving [the Plaintiff] or involving ... the collection of an account of [the Plaintiff]." *Id.* Here, the Plaintiff merely alleges conclusory accusations that the Defendants obtained his credit report without permissible purpose which, as stated above, do not enjoy a presumption of truth. *See Malleus,* 641 F.3d at 563. The Complaint is devoid of any facts describing, with some modicum of specificity, when these "credit pulls" took place or discounting the relationship, if any, between the Plaintiff and

the Defendants. Finally, the Plaintiff has not averred any facts from which the Court can infer that the Defendants knew, or should have known, that they did not intend to use the Plaintiff's credit report for a permissible purpose under the FCRA, all of which Plaintiff must do with provable facts in order to state a claim.

**\*6** After review of the petition for IFP status and the Complaint, the Court concludes that: (1) the pending Motion to Proceed IFP, as filed, is granted; and (2) the Complaint fails to state a claim upon which relief may be granted under the FDCPA, FCRA, FCEUA (and, therefore, the PUTPCP). Under the rule of *Denton v. Hernandez,* 504 U.S. 25, 34, 112 S.Ct. 1728, 118 L.Ed.2d 340 (1992), and *Grayson v. Mayview State Hospital,* 293 F.3d 103, 108 (3d Cir.2002), each holding that where a complaint can be remedied by amendment, this Court must allow leave to amend, the Court hereby dismisses the Complaint without prejudice and with leave to amend. If Plaintiff desires to do so, he must file his Amended Complaint within thirty (30) days of this date, setting forth in sufficient detail the facts necessary to support his claims, as more fully set forth in this opinion.

An appropriate order will issue.

W.D.Pa.,2012.
Tauro v. Asset Acceptance
Slip Copy, 2012 WL 2359954 (W.D.Pa.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT
# 8

Not Reported in F.Supp.2d, 2010 WL 5140055 (N.D.Ill.)
**(Cite as: 2010 WL 5140055 (N.D.Ill.))**

**C**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Kristen GARNETT and Steven Garnett, on behalf
of themselves and all others similarly situated,
Plaintiff,
v.
MILLENNIUM MEDICAL MANAGEMENT RE-
SOURCES, INC., an Illinois corporation, and
Emergency Healthcare Physicians, Ltd., an Illinois
corporation, Defendants.

No. 10 C 3317.
Dec. 9, 2010.

Larry D. Drury, Larry D. Drury, Ltd., Chicago, IL,
for Plaintiffs.

David Barry Goroff, Benjamin B. Folsom, Edward
J. Green, Foley & Lardner, Chicago, IL, John C.
Kocoras, Christopher MacNeil Murphy, Kristen
Klanow, McDermott, Will & Emery LLP, Chicago,
IL, for Defendants.

### OPINION AND ORDER

WILLIAM T. HART, District Judge.

**\*1** Defendant Emergency Healthcare Physi-
cians, Ltd. ("EHP") is a provider of medical ser-
vices at emergency rooms. Named plaintiffs Kristen
and Steven Garnett [FN1] have both been emergency
room patients who were provided medical treatment
by EHP personnel. When receiving such treatment,
they were each required to provide personally iden-
tifiable health and financial information, including
name, address, phone number, date of birth, social
security number, driver's license number, and
health insurance information (hereinafter "Personal
Information"). EHP's records for each plaintiff in-
cluded medical diagnoses, medical history, and
medical record number (hereinafter "Medical In-
formation"). Defendant Millennium Medical Man-

agement Resource, Inc. ("Millennium") provides
medical coding and bill collection services for med-
ical providers, including EHP. The Personal and
Medical Information of plaintiffs that was collected
by EHP was electronically stored by Millennium,
including on a portable hard drive that was not en-
crypted.

> FN1. Plaintiffs bring this action as a putat-
> ive class action. However, they have not
> moved for class certification. Since named
> plaintiff's individual claims are being dis-
> missed, a class will not be certified and the
> claims of the putative class will be dis-
> missed without prejudice.

On Saturday, February 27, 2010, Millennium's
offices were burglarized and the portable hard drive
containing plaintiffs' Information was stolen. The
hard drive has not been recovered nor have the
burglars been apprehended or identified. There is
no allegation that the burglars have actually ac-
cessed the hard drive nor any allegation that
plaintiffs or any putative class member has suffered
any identity theft consequences other than the ex-
penses of credit monitoring to ensure there is not a
misuse of any of the data.

In their Complaint, plaintiffs state five counts.
Counts I and II allege that defendants' conduct viol-
ated the Fair Credit Reporting Act ("FCRA"), 15
U.S.C. § 1681 et seq. Count I alleges an intentional
violation based on deliberate or reckless disregard
of maintaining reasonable procedures to protect
plaintiff's Information and Count II alleges a negli-
gent violation. [FN2] Plaintiffs also bring three state
law claims, relying on supplemental jurisdiction, 28
U.S.C. § 1367. [FN3] Count III is for negligent dis-
closure of information. Count IV is for breach of
implied contract. Count V is for invasion of privacy
and misappropriation of confidential information.
Defendants move to dismiss the FCRA claims on
alternative grounds that each is not a consumer re-
porting agency ("CRA"), there has been no disclos-

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 5140055 (N.D.Ill.)

**(Cite as: 2010 WL 5140055 (N.D.Ill.))**

ure of a consumer report ("CR"), and plaintiffs have not alleged any actual damages. Defendants contend the supplemental state law claims should be dismissed for lack of jurisdiction if the FCRA claims are dismissed, *see* 28 U.S.C. § 1367(c)(3), or, alternatively, all the state law claims fail on their merits.

> FN2. For a willful violation, plaintiffs would be entitled to actual or statutory damages, 15 U.S.C. § 1681n(a)(1)(A), while negligent violations are limited to actual damages, *id.* § 1681o(a)(1).

> FN3. It is alleged that both plaintiffs and defendants are Illinois citizens. The only basis for jurisdiction in this case is federal question jurisdiction over Counts I and II and supplemental jurisdiction over the remaining Counts.

The Supreme Court recently summarized the standard applicable to motions to dismiss.

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." As the Court held in *Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929, the pleading standard Rule 8 announces does not require "detailed factual allegations," but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation. *Id.,* at 555, (citing *Papasan v. Allain,* 478 U.S. 265, 286, 106 S.Ct. 2932, 92 L.Ed.2d 209 (1986)). A pleading that offers "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." 550 U.S., at 555. Nor does a complaint suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.,* at 557.

**\*2** To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." *Id.* at 570. A claim has facial plaus-

ibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* at 556.

*Ashcroft v. Iqbal,* —— U.S. ——, ——, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009).

The Seventh Circuit applies a type of sliding scale approach to plausibility. The more complex and less straightforward the case and the more costly potential discovery, the more detail that will be required to satisfy the plausibility requirement. *Swanson v. Citibank, N.A.,* 614 F.3d 400, 404–05 (7th Cir.2010); *Tamayo v. Blagojevich,* 526 F.3d 1074, 1082–83 (7th Cir.2008); *Limestone Dev., Corp. v. Village of Lemont, Ill.,* 520 F.3d 797, 803–04 (7th Cir.2008); *Stickhost v. 3–D Leasing, Inc.,* 2010 WL 3834553 \*2 (C.D.Ill. Sept.21, 2010). A plaintiff "must give enough details about the subject-matter of the case to present a story that holds together. In other words, the court will ask itself could these things have happened, not did they happen." *Swanson,* 614 F.3d at 404. "[I]n many straightforward cases, it will not be any more difficult today for a plaintiff to meet that burden [of stating a claim] than it was before the [Supreme] Court's recent decisions." *Id.*

The FCRA defines a CRA as meaning "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports." 15 U.S.C. § 1681a(f).

A CR is generally defined as meaning "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness, credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Not Reported in F.Supp.2d, 2010 WL 5140055 (N.D.Ill.)
**(Cite as: 2010 WL 5140055 (N.D.Ill.))**

used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for—(A) credit or insurance to be used primarily for personal, family, or household purposes; (B) employment purposes; or (C) any other purpose authorized under section 1681b of this title." *Id.* § 1681a(d) (1). Expressly excluded from the definition of a CR is "any report containing information solely as to transactions or experiences between the consumer and the person making the report." *Id.* § 1681a(d)(2)(A)(i).

Plaintiffs repeat the statutory language in conclusorily alleging that each defendant is a CRA. Compl. ¶ 32. Plaintiffs, however, also allege that EHP provides physician services at emergency rooms and Millennium provides medical coding and collection services for medical providers. Plaintiffs must allege sufficient facts to plausibly support that each defendant is a CRA. *Knechtel v. Choicepoint, Inc.,* 2009 WL 4123275 *4 (D.N.J. Nov.23, 2009). The minimal allegations regarding the nature of defendants' businesses do not plausibly support that either defendant regularly engages in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties. *See id.* at *3–4. Providing billing and collection services does not make Millennium a CRA. *See id.; D'Angelo v. Wilmington Med. Ctr., Inc.,* 515 F.Supp. 1250, 1253 (D.Del.1981); *Mitchell v. Surety Acceptance Corp.,* 838 F.Supp. 497, 500 (D.Colo.1993). EHP was the provider of consumer services to plaintiffs. Other than the conclusory allegation of ¶ 32, there is no indication that EHP organized information for purposes of providing consumer reports. Forwarding transactional information, including medical information, to its coding and billing agency does not take EHP outside the § 1681a(d) (2)(A)(i) exclusion regarding the definition of a consumer report.[FN4] Contrary to plaintiffs' contention, conveying medical information is not itself a consumer report. Instead, the FCRA places restrictions on reporting medical information that might be included in a consumer report because credit information pertains to bills for medical services. *See* 15 U.S.C. § 1681b(g).

> FN4. Section 1681a(d)(3)'s medical information exception to the § 1681a(d)(2)(A) exclusion does not apply to subsection (i), but instead applies to subsections (ii) and (iii) which pertain to sharing information among related entities.

**\*3** The minimal facts alleged by plaintiff regarding activities of defendants provide support for concluding each defendant is not a CRA. Particularly in that light, a conclusory allegation that each defendant is a CRA is not sufficient to plausibly support that either defendant is a CRA. Neither is it sufficiently alleged that either defendant made a communication that constitutes a CR. Since it has not been adequately alleged that either defendant is a CRA, plaintiffs' FCRA claims fail.

Named plaintiffs' individual federal claims will be dismissed with prejudice. Named plaintiffs' individual state law claims will be dismissed without prejudice for lack of subject matter jurisdiction. *See* 28 U.S.C. § 1367(c)(3). All claims of the putative class members will be dismissed without prejudice.

IT IS THEREFORE ORDERED that defendants' motions to dismiss [13, 17] are granted. Class certification is denied. The Clerk of the Court is directed to enter judgment in favor of defendants and against plaintiffs dismissing named plaintiffs' federal cause of action with prejudice and dismissing named plaintiffs' state law cause of action and all claims of the putative class without prejudice.

N.D.Ill.,2010.
Garnett v. Millennium Medical Management Resources, Inc.
Not Reported in F.Supp.2d, 2010 WL 5140055 (N.D.Ill.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

# EXHIBIT
# 9

Slip Copy, 2012 WL 2061624 (N.D.Ill.)
**(Cite as: 2012 WL 2061624 (N.D.Ill.))**

Only the Westlaw citation is currently available.

United States District Court,
N.D. Illinois,
Eastern Division.
Fallon FONG, Plaintiff,
v.
CLIENT SERVICES, INC., Defendant.

No. 12 C 1934.
June 6, 2012.

Fallon Fong, Chicago, IL, pro se.

Matthew James Aplington, The Lowenbaum Partnership, L.L.C., St. Louis, MO, for Defendant.

### *MEMORANDUM OPINION AND ORDER*

ROBERT W. GETTLEMAN, District Judge.

**\*1** Plaintiff Fallon Fong filed a pro se three-count complaint alleging that defendant Client Services, Inc., a debt collection company, violated the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681b *et seq.,* the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692 *et seq.,* and the Illinois Collection Agency Act, 225 ILCS 425/9 ("ICCA"). Defendant has moved to dismiss the complaint under Fed.R.Civ.P. 12(b)(6). For the following reasons, defendant's motion to dismiss is granted.

A Rule 12(b)(6) motion tests the sufficiency of the complaint, not the merits of the case. *Gibson v. City of Chicago,* 910 F.2d 1510, 1520 (7th Cir.1990). In evaluating a motion to dismiss, the court thus accepts the complaint's well-pleaded factual allegations as true and draws all reasonable inferences in the plaintiff's favor. *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555–56, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) (citations omitted). To provide the defendant with "fair notice of what the claim is and the grounds upon which it rests," *id.* at 555, the complaint must provide "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed.R.Civ.P. 8(a)(2). In addition, its allegations must plausibly suggest that the plaintiff has a right to relief and raise that possibility above the "speculative level." *Twombly,* 550 U.S. at 555, citing 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235–36 (3d ed.2004); *see Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (explaining that *Twombly's* pleading principles apply in all civil actions).

This standard demands that a complaint allege more than "legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Iqbal,* 556 U .S. at 679. Plaintiff, however, has done little more than that. The complaint's allegations for each of the three counts simply parrot the statutory text, which is insufficient. *See Brooks v. Ross,* 578 F.3d 574, 581 (7th Cir.2009) ("We understand the Court in *Iqbal* to be admonishing those plaintiffs who merely parrot the statutory language of the claims that they are pleading (something that anyone could do, regardless of what may be prompting the lawsuit), rather than providing some specific facts to ground those legal claims, that they must do more.").

Nor does the complaint's five-paragraph "Factual Allegations" section save the complaint. Stripping this section of its bare legal conclusions, plaintiff has alleged as follows: In an attempt to collect a debt from plaintiff on behalf of Discover Financial Services, defendant initiated a credit pull on plaintiff's Experian credit report on December 15, 2009. On April 19, 2011, defendant sent plaintiff a collection letter. On May 2 of that year, plaintiff responded with a debt validation request, to which defendant failed to respond. These facts are irrelevant to plaintiff's ICCA and FDCPA claims, and undermine her attempts to allege a FCRA claim.

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.

Slip Copy, 2012 WL 2061624 (N.D.Ill.)
**(Cite as: 2012 WL 2061624 (N.D.Ill.))**

**\*2** In opposing defendant's motion to dismiss, plaintiff argues that her allegation regarding defendant's failure to respond to her validation request indicates that defendant violated the three statutes she invokes because it shows that defendant "do[es] not have any entitlement of [sic] the debt." But even giving plaintiff's pro se complaint the liberal construction to which it is entitled, *see Kaba v. Stepp,* 458 F.3d 678, 687 (7th Cir.2006), this is not what the complaint alleges. Instead, its alleges only that defendant failed to respond to plaintiff's request, which is equally consistent with other, lawful explanations (for example, that defendant decided not to pursue the debt collection or that the debt was paid after plaintiff sent the verification request). *See Brooks,* 578 F.3d at 581–82 (finding that a complaint was insufficient when it was "just as consistent with lawful conduct as it [was] with wrongdoing").

Under the FDCPA, if a debtor requests verification within thirty days of receipt of the initial notice—as plaintiff alleges she did—the collector must "cease collection of the debt ... until the debt collector obtains verification of the debt or a copy of the judgment, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector." 15 U.S.C. § 1692g(b). Plaintiff alleges that defendant failed to provide verification of the debt, but that itself is not an FDCPA violation—nothing in that statute requires a collector to respond to a written dispute if it chooses to abandon its collection effort. The provisions plaintiff cites prohibit a debt collector from falsely representing "the character, amount, or legal status of any debt," § 1692e(2)(A), and bar "collection of any amount [that is not] expressly authorized by the agreement creating the debt or permitted by law," § 1692f(1). None of the complaint's factual allegations concern either of these provisions. Plaintiff's theory (advanced in her response to defendant's motion, rather than in the complaint) that defendant's failure to respond necessarily means that defendant mis-

represented the debt is simply too tenuous a basis on which to allow her FDCPA claim to stand.

Similarly, the complaint lacks factual allegations to support plaintiff's claim that defendant violated the ICCA by "[m]isrepresenting the amount of the claim or debt alleged to be owed." Other than plaintiff's failed attempt to link defendant's alleged failure to respond to the verification request, she has pled no facts that relate to defendant's having misrepresented the amount of the debt. This claim does not put defendant on notice of what the alleged misrepresentation was, and it does not plausibly suggest that plaintiff may be entitled to relief.

Plaintiff's FCRA claim is also insufficient, because plaintiff has included no factual allegations to show that defendant acted without a permissible purpose in accessing her Experian credit report. Rather, plaintiff simply includes a conclusory allegation that defendant accessed her credit report without a permissible purpose. Even if that allegation sufficed (which it does not), it is contradicted by the allegation that defendant "was attempting to collect a debt" from her. Attempting to collect a debt is a permissible purpose. 15 U.S.C. § 1681b(3)(A); *see Phillips v. Grendahl,* 312 F.3d 357, 366 (7th Cir.2002). Thus, the complaint fails to state a claim under the FCRA.

**\*3** For the foregoing reasons, defendant's motion to dismiss the complaint is granted and the case is dismissed without prejudice. Defendant's request for attorneys' fees is denied.

N.D.Ill.,2012.
Fong v. Client Services, Inc.
Slip Copy, 2012 WL 2061624 (N.D.Ill.)

END OF DOCUMENT

© 2013 Thomson Reuters. No Claim to Orig. US Gov. Works.